In re James Loren FRANKLIN, Debtor.

FIDELITY NATIONAL TITLE INSURANCE COMPANY, an Arizona Corporation, Plaintiff,

v.

James Loren FRANKLIN; JL Construction Company, a California Corporation; Stratus Group, a California Corporation; Pennsylvania River Run Partners, a Pennsylvania Limited Partnership; Wooldridge Construction Co., Inc., a California Corporation; Charlestown Investments, Ltd.; The Stratus Group, a California Corporation; Stratus Development Inc., a California Corporation; and Does 1 through 500, inclusive, Defendants.

Misc. No. 94–M206–C–7.
Adv. No. 94–2540.

United States Bankruptcy Court,
E.D. California.

March 31, 1995.

914

Gary M. Funamura, Gilbert Khachadourian, Jr., Trainor, Robertson, Smits & Wade, Sacramento, CA, for plaintiff Fidelity Nat. Title Ins. Co.

Timothy J. Truxaw, Dickstein & Truxaw, San Diego, CA, for defendant James Loren Franklin.

## MEMORANDUM DECISION

CHRISTOPHER M. KLEIN, Bankruptcy Judge:

This motion to transfer venue of an action removed from state court presents a poorly understood question regarding the concurrent jurisdiction of state and federal courts to determine whether particular debts are discharged in a bankruptcy case. Here, the debtor in his bankruptcy schedules omitted debts that are allegedly based on indemnification, contribution, negligent misrepresentation, and fraud and was sued post-bankruptcy in a fourteen-count, eight-defendant state court action. The debtor removed that action to federal court as an "adversary proceeding" in bankruptcy and now seeks to have it transferred to the judicial district where the original bankruptcy case was filed.

I conclude that the state court has concurrent jurisdiction to determine whether the omitted debts are nondischargeable in bankruptcy, that the stay that impedes the prosecution of that litigation against the debtor in state court has expired, and that considerations of convenience and wise judicial administration are better served by abstention and remand to state court rather than transfer to the bankruptcy court that has jurisdiction over the debtor's bankruptcy case.

### *FACTS*

James Loren Franklin ("Franklin") filed a chapter 7 bankruptcy case in the Southern District of California on May 28, 1993. It was processed as a "no-asset" case in which no deadline for filing proofs of claim is fixed.[1] Franklin was discharged of all dischargeable debts on September 28, 1993. The case was subsequently closed.

Franklin did not schedule any debts owed to Fidelity National Title Insurance Company ("Fidelity"), list Fidelity as a creditor, or otherwise give Fidelity notice of the bankruptcy case.

Fidelity filed a complaint on April 1, 1994, in the Superior Court of the State of California, County of Sacramento, against Franklin and seven other defendants seeking recovery on fourteen counts sounding in contract and tort arising from four Franklin real estate development projects in Placer, Sacramento, and Contra Costa counties.[2] Count 13 alleges that Franklin committed civil fraud in the course of inducing Fidelity to issue loan policies of title insurance totaling $56.975 million.

Franklin, who now resides in Placer County in the Eastern District of California, removed the state court action to this court pursuant to 28 U.S.C. § 1452, filed an answer raising the affirmative defense of discharge in bankruptcy, and now, under 28 U.S.C. § 1412, seeks to transfer the action to the Southern District of California, which is (in Franklin's words) his "home court."

### *DISCUSSION*

#### I

The first task is to identify the courts that have jurisdiction over Fidelity's dispute with Franklin.

1. Rule 2002(e) provides:

   In a chapter 7 liquidation case, if it appears from the schedules that there are no assets from which a dividend can be paid, the notice of the meeting of creditors may include a statement to that effect; that it is unnecessary to file claims; and that if sufficient assets become available for the payment of a dividend, further notice will be given for the filing of claims.

   Fed.R.Bankr.P. 2002(e).

2. *Fidelity Nat'l Title Ins. Co. v. James Loren Franklin; JL Constr. Co.; Stratus Group; Pennsylvania River Run Partners; Wooldridge Constr. Co.; Charlestown Invs., Ltd.; The Stratus Group; Stratus Dev., Inc.; and Does 1–500,* No. 539800, Sacramento County Superior Court, filed April 1, 1994.

A

The dispute itself has a number of components. Fidelity pleads the fourteen state-law counts in the complaint: twelve counts sound in contract and seek indemnity or subrogation; two counts seek damages for the torts of fraud and negligent misrepresentation. All of these claims are within the traditional purview of state courts. The only apparent basis for a federal court to entertain them is bankruptcy jurisdiction. 28 U.S.C. § 1334(b).

Fidelity's allegations supporting the fraud count incidentally plead all of the essential elements of a nondischargeable fraud debt under Bankruptcy Code § 523(a)(2).[3] Fidelity has indicated that it intends to amend the pleadings to add a fifteenth count to declare that the debt was not discharged because it is an unlisted fraud debt under Bankruptcy Code § 523(a)(3)(B).[4] Such a judgment would be a declaratory judgment based on a question of federal law.

Franklin has denied the fraud allegations and has raised, as an affirmative defense to the contribution, indemnification, and negligent misrepresentation claims, his contention that any such debts were discharged notwithstanding that he omitted them from his bankruptcy schedules. Although he raised discharge in bankruptcy as an affirmative defense, he could equally have raised it either by counterclaim seeking a declaration that any such omitted debts were discharged or as a declaratory judgment action in his "home court."[5]

Regardless of how Franklin raises the question of discharge, the facts regarding the contribution and indemnification claims necessarily implicate the exclusion from discharge that applies to omitted debts that would have been discharged if they had been scheduled. 11 U.S.C. § 523(a)(3)(A).[6] In other words, the contribution and indemnification claims reflect debts for which there is no independent theory of nondischargeability under the other subsections of section 523(a). 11 U.S.C. § 523(a)(1)–(2) & (4)–(16). And the facts related to the fraud count implicate the exception to discharge for fraud debts that are omitted from the debtor's schedules. 11 U.S.C. § 523(a)(3)(B). Under all alternatives, the same constellation of facts regarding omission and the state of the creditor's knowledge of bankruptcy would need to be established.

The underlying dispute, thus, includes aspects of state law and of federal bankruptcy law. No federal issues arise in the claims between Fidelity and any parties other than

3. 11 U.S.C. § 523(a)(2). In order to have the fraud claim determined to be nondischargeable, Fidelity will have to prove the following essential elements of basic fraud under section 523(a)(2)(A): (1) debtor made a material representation; (2) representation was false; (3) debtor knew the representation was false; (4) debtor's intention and purpose in making the representation was to deceive creditor; (5) creditor justifiably relied on the representation; and (6) creditor sustained loss or damage as a proximate result of the representation. *Eugene Parks Law Corp. v. Kirsh (In re Kirsh),* 973 F.2d 1454 (9th Cir.1992).

The elements of civil fraud under California law are essentially identical, including the requirement of justifiable reliance. *Seeger v. Odell,* 18 Cal.2d 409, 414, 115 P.2d 977, 980 (1941); 5 B. Witkin, Summary of California Law: Torts § 676 (9th ed. 1988).

4. 11 U.S.C. § 523(a)(3)(B). As will be discussed below, this section requires proof of all essential elements of section 523(a)(2) plus proof that the creditor was neither listed nor knew of the bankruptcy case.

5. *Costa v. Welch (In re Costa),* 172 B.R. 954, 961–65 (Bankr.E.D.Cal.1994); *see also* Helbling & Klein, *The Emerging Harmless Innocent Omission Defense to Nondischargeability Under Bankruptcy Code § 523(a)(3)(A): Making Sense of the Confusion Over Reopening Cases and Amending Schedules to Add Omitted Debts,* 69 Am.Bankr.L.J. 33, 48–50 (1995) (alternatives for adjudicating omitted debt disputes).

6. That provision excepts from discharge any debt:

> (3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—
> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing;....

11 U.S.C. § 523(a)(3)(A). As will be seen, the "timely-filing-of-a-proof-of-claim" requirement is important in the analysis of the dischargeability of omitted debts in "no-asset" cases in which there is no deadline for filing proofs of claim.

Franklin. Fidelity's claims against Franklin are all based on state law except the question of dischargeability of the fraud claim, the proof of which will be identical to the proof of the California fraud count. Franklin's federal defense to the contribution, indemnification, and negligent misrepresentation claims will be quite simple because he will prevail merely by demonstrating that the case was a "no-asset" bankruptcy in which no deadline for filing claims was fixed.[7]

B

Two federal statutes allocate jurisdiction over disputes in which determinations of nondischargeability in bankruptcy are sought regarding specific debts: Judicial Code § 1334 and Bankruptcy Code § 523(c). 28 U.S.C. § 1334; 11 U.S.C. § 523(c). In addition, the Bankruptcy Code's automatic stay functions as a quasi-jurisdictional statute that precludes proceedings, without leave of the bankruptcy court, in nonbankruptcy courts that otherwise have concurrent jurisdiction. 11 U.S.C. § 362(a).

1

The primary bankruptcy jurisdiction statute applicable to Fidelity's nondischargeability claim is 28 U.S.C. § 1334, of which the critical parts are subsections (a), (b), and (e):[8]

> (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
>
> (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.
>
> (e) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of such case, and of the property of the estate.

28 U.S.C. § 1334(a)–(b) & (e).

Section 1334(b) establishes the general proposition that state and federal courts have concurrent subject matter jurisdiction over civil proceedings that arise under, arise in, or are related to a bankruptcy case. In contrast, federal jurisdiction over the bankruptcy case itself and over the property of the debtor and of the estate is exclusive.

Whatever else the phrase "arise under" may mean in federal jurisprudence,[9] civil proceedings that "arise under" the Bankruptcy Code within the meaning of 28 U.S.C. § 1334(b) include the causes of action for nondischargeability that are created by

7. *Beezley v. California Land Title Co. (In re Beezley),* 994 F.2d 1433 (9th Cir.1993); *Costa,* 172 B.R. 954. The rationale for allowing the discharge of all omitted debts as to which there is no theory of nondischargeability other than the omission is that in a "no-asset" case in which no deadline for filing a proof of claim has been fixed, it is still timely to file a proof of claim within the meaning of section 523(a)(3)(A) when the creditor learns of the bankruptcy, even if the case must be reopened to do so. The creditor has suffered no loss on account of the omission because there is nothing to distribute to creditors. If assets later come to light, as they sometimes do because undisclosed property of the estate remains property of the estate forever (11 U.S.C. § 554(d)), the bankruptcy case will be reopened, a deadline for proofs of claim will be fixed, and all creditors will then be given notice, after which point an omitted debt might be able to qualify for nondischargeability under section 523(a)(3)(A) if the creditor is still unaware of the bankruptcy.

In cases in which a deadline for proof of claim was fixed but in which there were no assets to distribute to creditors, the dischargeability analysis becomes more complex and unsettled. *See* Helbling & Klein, *The Emerging Harmless Innocent Omission Defense to Nondischargeability Under Bankruptcy Code § 523(a)(3)(A),* note 5 *supra.*

8. Subsections (c) and (d) relate to abstention in favor of state courts.

9. *Although the term "arise under" in the law of* federal jurisprudence has a convoluted history (especially in the context of removal) and has eluded precise definition, it is agreed that causes of action that exist solely by virtue of federal statute "arise under" federal law. *See Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 8–12, 103 S.Ct. 2841, 2845–2848, 77 L.Ed.2d 420 (1983); 1 J. Moore, Moore's Federal Practice ¶ 0.62[2.–2] at 663–64 (2d ed. 1993); 1A *id.* ¶ 0.160[5]; 13B C. Wright, A. Miller, E. Cooper, Federal Practice & Procedure: Jurisdiction 2d § 3562, at 24–26 (2d Ed.1984).

Bankruptcy Code § 523.[10] 1 L. King, Collier on Bankruptcy ¶ 3.01[1][c][iii] (15th ed. 1994); 3 *id.* ¶ 523.05.

The general rule is that state and federal courts have concurrent jurisdiction over nondischargeability actions. Thus, for example, although federal law controls the determination of whether a divorce-based debt is in the nature of nondischargeable alimony or child support, 11 U.S.C. § 523(a)(5), both state courts and federal courts have jurisdiction to decide the issue. 28 U.S.C. § 1334(b); *Siragusa v. Siragusa (In re Siragusa),* 27 F.3d 406, 408 (9th Cir. 1994).

Franklin's dischargeable omitted debt defense and Fidelity's nondischargeability cause of action for fraud are within the ambit of section 1334(b) concurrent jurisdiction unless there is some applicable exception.

2

An exclusive jurisdiction exception to the general rule of concurrent jurisdiction per section 1334(b) is carved out by Bankruptcy Code § 523(c), which, in some circumstances, reserves exclusive federal jurisdiction over four of the sixteen categories of nondischargeability action, including fraud actions under section 523(a)(2). In other words, there is an exclusive jurisdiction exception to the general rule of concurrent jurisdiction, and there is a concurrent jurisdiction exception to that exclusive jurisdiction exception.

Franklin's dischargeable omitted debt defense remains a matter of concurrent jurisdiction because section 523(a)(3) is not covered by section 523(c). Fidelity's fraud claim,[11] however, is nominally within the exclusive jurisdiction exception, and the question ultimately becomes whether it is within the exception to the exception.

Section 523, entitled "Exceptions to discharge", enumerates sixteen categories of debts that are not discharged if the debtor is an individual.[12] 11 U.S.C. § 523(a)(1)–(16). Fidelity's fraud claim ordinarily would be nondischargeable under section 523(a)(2). Formal determinations of dischargeability or nondischargeability[13] under section 523(a) are obtained by way of declaratory judgment. Fed.R.Bankr.P. 7001(6) & (9).

The key jurisdictional language that creates the exception to 28 U.S.C. § 1334(b) is found in section 523(c)(1):

> (c)(1) Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), (6), or (15) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), (6), or (15), as the case may be, of subsection (a) of this section.

11 U.S.C. § 523(c)(1), *as amended by* Bankruptcy Reform Act of 1994, § 304(e), 108 Stat. 4133. Since Fidelity's fraud claim is premised on section 523(a)(2), it appears to be within the exclusive jurisdiction exception.

The reason that section 523(c) constitutes an exclusive federal jurisdiction provision is not apparent from the face of the statute. The explanation is that it carries forward a

10. The Bankruptcy Code defines the terms of the discharge and the terms of exceptions to discharge. The statutory mechanics of nondischargeability actions are straightforward. The scope of discharge in a chapter 7 liquidation case of an individual debtor is: "Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief and ... [other specified liabilities]." 11 U.S.C. § 727(b). Sixteen categories of exceptions to the discharge are specified at section 523(a). 11 U.S.C. § 523(a)(1)–(16).

11. For purposes of analysis, the fraud allegations are assumed to be true.

12. It must be emphasized that the section 523 exceptions to discharge apply only to individuals in bankruptcy and do not apply when the debtor is not an individual. 11 U.S.C. § 523(a). Moreover, only some of the exceptions apply to individual debtors in chapter 13 cases relating to adjustment of debts of an individual with regular income. 11 U.S.C. § 1328(a).

13. The terms "dischargeability" and "nondischargeability" are commonly used synonymously to describe actions brought under section 523(a).

provision from the former Bankruptcy Act that unquestionably provided for exclusive federal jurisdiction over analogous nondischargeability provisions.

What is now section 523(c)(1) was originally enacted as Bankruptcy Code § 523(c) in 1978 [14] and applied to three categories of nondischargeable debt: section 523(a)(2) actions relating to debts incurred by fraud or misrepresentation; section 523(a)(4) actions relating to fiduciary misconduct, embezzlement, or larceny; and section 523(a)(6) actions relating to willful and malicious injury. The fourth category, section 523(a)(15), was added in 1994 and relates to marital dissolution obligations that do not constitute otherwise nondischargeable alimony, maintenance, or support.

The antecedent of Bankruptcy Code § 523(c)(1) was Bankruptcy Act § 17c, which was much more specific about the exclusivity of federal jurisdiction over the analogues of sections 523(a)(2), (a)(4), and (a)(6).[15] After 1970, the categories of debt made nondischargeable by Bankruptcy Act §§ 17a(2), (4), and (8) were discharged unless the bankruptcy court determined otherwise.[16] Although Bankruptcy Act § 17c did not use the phrase "exclusive jurisdiction", it permitted no non-bankruptcy forum to make the determination; its drafters regarded it as conferring exclusive federal jurisdiction and the Supreme Court agreed. *Grogan v. Garner,* 498 U.S. 279, 284 n. 10, 111 S.Ct. 654, 658 n. 10, 112 L.Ed.2d 755 (1991); *Brown v. Felsen,* 442 U.S. 127, 136–37 & n. 7, 99 S.Ct. 2205, 2211–2212 & n. 7, 60 L.Ed.2d 767 (1979) (statement by Lawrence P. King); 3 L. King, Collier on Bankruptcy ¶ 523.05 (15th ed. 1994).

The remaining five categories of nondischargeable debt under Bankruptcy Act § 17a were not subject to the exclusive jurisdiction provision of Bankruptcy Act § 17c. Thus, for example, the discharge status of debts that were not scheduled in time for proof and allowance of claim could be determined in either state or federal court.[17]

14. It was redesignated as section 523(c)(1) in 1990 when an exception, appearing as section 523(c)(2), was carved out in favor of federal depository institutions regulatory agencies. Crime Control Act of 1990, Pub.L. No. 101–647, § 2522(a), 104 Stat. 4866.

15. Former Bankruptcy Act § 17c was enacted in 1970 and provided:

> c. (1) The bankrupt or any creditor may file an application with the court for the determination of the dischargeability of any debt.
>
> (2) A creditor who contends that his debt is not discharged under clause (2), (4), or (8) of subdivision a of this section must file an application for a determination of dischargeability within the time fixed by the court pursuant to paragraph (1) of subdivision b of section 14 of this Act [court-ordered deadlines] and unless an application is timely filed, the debt shall be discharged. Notwithstanding the preceding sentence, no application need be filed for a debt excepted by clause (8) if a right to trial by jury exists and any party to a pending action on such debt has timely demanded a trial by jury or if either the bankrupt or a creditor submits a signed statement of an intention to do so.
>
> (3) After hearing upon notice, the court shall determine the dischargeability of any debt for which an application for such determination has been filed, shall make such orders as are necessary to protect or effectuate a determination that any debt is dischargeable and, if any debt is determined to be nondischargeable, shall determine the remaining issues, render judgment, and make all orders necessary for the enforcement thereof. A creditor who files such application does not submit himself to the jurisdiction of the court for any purposes other than those specified in this subdivision c.

Act of Oct. 19, 1970, Pub.L. 91–467, § 7, 84 Stat. 992–93, *amending* Bankruptcy Act § 17, *codified at* 11 U.S.C. § 35(c) (1976) (repealed 1979).

16. *Id.* Bankruptcy Act §§ 17a(2), (4), and (8) made nondischargeable any debts that:

> (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive, or for willful and malicious conversion of property; ...
>
> (4) were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity; ...
>
> (8) are liabilities for willful and malicious injuries to the person or property of another other than conversion as excepted under clause (2) of this subdivision.

Bankruptcy Act § 17a, *codified at* 11 U.S.C. § 35(a) (1976) (repealed 1979).

17. Bankruptcy Act § 17a(3) made nondischargeable any debts that:

The drafters of the Bankruptcy Code and its leading commentator agree that no change in law was wrought in the transition from Bankruptcy Act § 17c to Bankruptcy Code § 523(c). S.Rep. No. 95–989, 95th Cong., 2d Sess. at 80 (1978);[18] H.R.Rep. No. 95–595, 95th Cong., 1st Sess. at 365 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5865–5866;[19] 3 L. King, Collier on Bankruptcy ¶ 523.05 (15th ed. 1994).[20]

Thus, despite vague draftsmanship, section 523(c) confers exclusive jurisdiction[21] over nondischargeability actions under: section 523(a)(2) relating to debts incurred by fraud;[22] section 523(a)(4) relating to fiduciary misconduct, embezzlement, or larceny;[23] section 523(a)(6) relating to willful and malicious injury;[24] and section 523(a)(15) relating to marital dissolution obligations that do not constitute otherwise nondischargeable al-

(3) have not been duly scheduled in time for proof and allowance, with the name of the creditor if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy;

Bankruptcy Act § 17a(3), 11 U.S.C. § 35(a)(3) (1976) (repealed 1979).

18. "Subsection (c) requires a creditor who is owed a debt that may be excepted from discharge under paragraph (2), (4), or (6), (false statements, defalcation or larceny misappropriation, or willful and malicious injury) to initiate proceedings in the bankruptcy court for an exception to discharge. If the creditor does not act, the debt is discharged. This provision does not change existing law." S.Rep. No. 95–598 at 80, U.S.Code Cong. & Admin.News 1978, pp. 5865–5866.

19. "Subsection (c) requires a creditor who is owed a debt that may be expected [sic] from discharge under paragraph (2), (4), or (6), (false statements, embezzlement or larceny, or willful and malicious injury) to initiate proceedings in the bankruptcy court for an exception to discharge. If the creditor does not act, the debt is discharged. This provision does not change current law." H.R.Rep. No. 95–595 at 365, U.S.Code Cong. & Admin.News 1978, p. 6321.

20. Professor King says:

The 1970 amendments to the former Bankruptcy Act had added subdivision c to Section 17, providing that the debts excepted from discharge by Section 17a(2), (4), or (8), were to be discharged unless a creditor who contended that his debt was not discharged pursuant to those clauses of Section 17a timely filed an application for a determination of dischargeability. The Code does not change this law.

3 L. King, Collier on Bankruptcy ¶ 523.05 (15th ed. 1994).

21. As a practical matter, exclusive federal jurisdiction means bankruptcy court. Formally, federal bankruptcy jurisdiction reposes in the district court, of which the bankruptcy court is a unit. 28 U.S.C. § 151. Jurisdiction among the district and bankruptcy judges is allocated according to the terms of Judicial Code § 157. *Id.* § 157. All bankruptcy matters are automatically referred to bankruptcy judges by virtue of a standing order of reference. *Id.* § 157(a). Bankruptcy judges have the power to "hear and determine" any "core proceeding" as defined by section 157(b), which proceedings include dischargeability actions. *Id.* § 157(b)(2)(I). As to noncore proceedings, the bankruptcy judge may hear the matter but must prepare a report and recommendation subject to de novo review in the district court unless the parties consent to have the bankruptcy judge render final judgment. *Id.* § 157(c). District judges may hear any core or noncore proceeding in the capacity of trial judge, but must withdraw the order of reference in the case or proceeding. *See id.* § 157(d).

22. The section makes nondischargeable any debt:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt— ...

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive; ....

11 U.S.C. § 523(a)(2)(A) & (B).

Although it is common to refer to section 523(a)(2) actions as based on "fraud", the statutory language actually sweeps broader.

23. This provision makes nondischargeable any debt: "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). A convenient shorthand reference is "fiduciary misconduct, embezzlement, or larceny."

24. This provision makes nondischargeable any debt: "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

imony, maintenance, or support.[25] Section 523(c) operates as an exception to the concurrent jurisdiction provision of 28 section 1334(b) that applies to the remainder of the section 523(a) actions, which may be heard in either state or federal court.

3

The question next becomes whether Fidelity's section 523(a)(2) fraud claim falls within the concurrent jurisdiction exception to the section 523(c) exclusive jurisdiction exception to the general rule of concurrent jurisdiction.

The exception to the exception is created by the preambular language of section 523(c): "Except as provided in subsection (a)(3)(B) of this section, ..." 11 U.S.C. § 523(c)(1).[26]

Section 523(a)(3)(B) excepts from discharge any debt that is:

> (3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit— ...
>
> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request;

11 U.S.C. § 523(a)(3)(B).

Cutting through some of the section's opacity, its critical element is the timeliness requirement for requesting a determination of dischargeability. The prescribed deadline for timely filing of such a request is sixty days after the first date established for the first meeting of creditors (regardless of whether the meeting is actually held) and can be extended only on motion filed *before* it expires. Fed.R.Bankr.P. 4007(c) & 9006(b)(3);[27] *Manufacturers Hanover v. Dewalt (In re Dewalt)*, 961 F.2d 848, 850–51 (9th Cir.1992) (seven-day notice of deadline not time enough).

Thus, if the debt to Fidelity had been listed or scheduled or if Fidelity had

25. The provision was added for cases filed beginning October 22, 1994, and makes nondischargeable any debt:

> (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—
>
> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
>
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor; ....

11 U.S.C. § 523(a)(15), *as added by* Bankruptcy Reform Act of 1994, § 301(e), 108 Stat. 4133.

Inexplicably, the Congress did not provide a safety valve for unscheduled creditors who do not know about the bankruptcy. As will be seen below, either section 523(a)(3)(B) needs to be amended to add section 523(a)(15) or Federal Rule of Bankruptcy Procedure 4007(c) needs to be amended to provide a longer limitations period or the doctrine of equitable tolling needs to be pressed into service. *See Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946) (equitable tolling generally applies to all federal limitations periods); *Olsen v. Zerbetz (In re Olsen)*, 36 F.3d 71, 73 (9th Cir.1994); *Young v. Matsumoto (In re United Ins. Mgt., Inc.)*, 14 F.3d 1380, 1384 (9th Cir.1994).

26. There is another exception, which is stated in more than 100 words, that applies only to Federal depository institutions regulatory agencies in certain circumstances. 11 U.S.C. § 523(c)(2).

27. Rule 4007(c) provides:

> A complaint to determine the dischargeability of any debt pursuant to § 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a). The court shall give all creditors not less than 30 days notice of the time so fixed in the manner provided in Rule 2002. On motion of any party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be made before the time has expired.

Fed.R.Bankr.P. 4007(c).

Rule 9006(b)(3) provides: "The court may enlarge the time for taking action under Rules ..., 4007(c), ... only to the extent and under the conditions stated in those rules." Fed. R.Bankr.P. 9006(b)(3).

notice of Franklin's bankruptcy, it would have needed to act promptly to request a determination that the debt is nondischargeable pursuant to section 523(a)(2) or else the debt would have been discharged. 3 L. King, Collier on Bankruptcy ¶ 523.05 (15th. ed. 1994). Franklin concedes that Fidelity was neither listed, nor scheduled, nor otherwise chargeable with notice of his bankruptcy.

Because Fidelity was unscheduled, unlisted, and unaware of the bankruptcy, its section 523(a)(2) cause of action is transmuted into a section 523(a)(3)(B) cause of action. That transmutation makes very little difference as to the applicable substantive law or as to proof at trial, but makes all the difference for purposes of jurisdiction and of the limitations period.

In a section 523(a)(3)(B) action, the plaintiff must prove all the elements of nondischargeability under section 523(a)(2), (a)(4), or (a)(6) and, in addition, must prove that the debt was unscheduled, unlisted, and the plaintiff was unaware of the bankruptcy in time to comply with the section 523(c) sixty-day deadline. These additional elements do not add much complexity and are ordinarily not difficult to prove.

Jurisdiction over section 523(a)(3) actions, however, is concurrent state and federal jurisdiction pursuant to section 1334(b), rather than the exclusive federal jurisdiction prescribed by section 523(c). Not only may dischargeability of the fraud claim be litigated in state court, the action, like all the concurrent jurisdiction nondischargeability actions, may be filed "at any time" after the bankruptcy case is first filed. Fed. R.Bankr.P. 4007(b);[28] *Irons v. Santiago (In re Santiago),* 175 B.R. 48, 50 (9th Cir. BAP 1994); *American Standard Ins. Co. v. Bakehorn,* 147 B.R. 480 (N.D.Ind.1992); *Glosser v. Parrish Real Estate (In re Grant),* 160 B.R. 839, 844 (Bankr.S.D.Cal.1993).

In short, the penalty to the debtor for failing to schedule a fraud debt or otherwise to inform the creditor of the bankruptcy is forfeiture of the right to enjoy exclusive federal jurisdiction and loss of the sixty-day limitations period applicable in the exclusive jurisdiction actions. *See* Helbling & Klein, *The Emerging Harmless Innocent Omission Defense to Nondischargeability Under 11 U.S.C. § 523(a)(3)(A): Making Sense of the Confusion Over Reopening Cases and Amending Schedules to Add Omitted Debts,* 69 Am.Bankr.L.J. 33, 44 (1995).

Since Franklin concedes that Fidelity was not listed in his bankruptcy schedules and did not otherwise know of the existence of his bankruptcy case before that deadline passed, the prerequisite to exclusive federal jurisdiction over Fidelity's nondischargeability action based on fraud has not been satisfied. Thus, Fidelity's nondischargeability action for fraud lies under section 523(a)(3)(B) rather than section 523(a)(2). It qualifies for the exception to the exception and may be litigated in state court.

4

Having concluded that a state court has jurisdiction to entertain Franklin's dischargeable omitted debt defense and Fidelity's nondischargeable fraud action, there nevertheless remains the quasi-jurisdictional question whether relief from the automatic stay imposed by Bankruptcy Code § 362 would be required in order to proceed in state court. 11 U.S.C. § 362(a).[29]

The stay precludes commencement or continuation of an action in a nonbankruptcy forum to recover a claim against the debtor that arose before the commencement of the bankruptcy case and precludes any act to collect, assess, or recover such a claim even if the nonbankruptcy forum has concurrent jurisdiction to hear the matter. *Id.* § 362(a)(1) & (6).

The quasi-jurisdictional nature of the automatic stay emerges from cases concluding

28. Rule 4007(b) provides: "A complaint other than under § 523(c) may be filed at any time. A case may be reopened without payment of an additional filing fee for the purpose of filing a complaint to obtain a determination under this rule." Fed.R.Bankr.P. 4007(b).

29. Exceptions to the stay for various categories of action are specified by section 362(b). 11 U.S.C. § 362(b). The expiration of the stay is governed by section 362(c). *Id.* § 362(c).

that an act in violation of the stay is void ab initio rather than merely voidable. *Schwartz v. United States (In re Schwartz),* 954 F.2d 569, 573–75 (9th Cir.1992); *Maritime Elec. Co. v. United Jersey Bank,* 959 F.2d 1194, 1206 (3rd Cir.1991); *Job v. Calder (In re Calder),* 907 F.2d 953, 956 (10th Cir.1990) (noting equitable exceptions); *Ellis v. Consolidated Diesel Elec. Corp.,* 894 F.2d 371, 372 (10th Cir.1990) (judgment by federal district court in violation of stay void for lack of jurisdiction).[30] This is consistent with prior law under the former Bankruptcy Act. *Kalb v. Feuerstein,* 308 U.S. 433, 443, 60 S.Ct. 343, 348, 84 L.Ed. 370 (1940) (automatic stay in Frazier–Lemke Act).

Thus, proceedings in a nonbankruptcy court in violation of the stay are in excess of that court's judicial power insofar as they apply to the debtor.[31] In other words, Bankruptcy Code § 362 trumps 28 U.S.C. § 1334(b) because the nonbankruptcy court lacks jurisdiction to the extent that the stay is violated.

The automatic stay, however, automatically expires at a time that is determined by whether the act in question is directed against property of the estate or against some other target, such as the debtor or the debtor's property. For actions that are directed against the debtor or property of the debtor, the stay expires at the earliest of the time the case is closed, the time the case is dismissed, or the time a discharge is granted or denied. 11 U.S.C. § 362(c)(2). The stay of an act against property of the estate continues until the property is no longer property of the estate. 11 U.S.C. § 362(c)(1).

The stay has expired with respect to Fidelity's nondischargeability action because it is directed against Franklin and not against the property of the bankruptcy estate and because it was not filed before the case was closed. Similarly, Franklin's dischargeable omitted debt defense is not directed against property of the estate. The automatic stay is not revived when the case is reopened.

Although only the bankruptcy court that has jurisdiction over the bankruptcy estate has the authority to terminate, annul, modify, or condition the automatic stay, 11 U.S.C. § 362(a),[32] "it is settled that both the bankruptcy court and the court in which the other litigation exists may construe the automatic stay." *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation,* 140 B.R. 969, 973 (N.D.Ill.1992) (citing cases) (circuit judge sitting by designation in multidistrict litigation); *In re Related Asbestos Cases,* 23 B.R. at 526–27.

The power of a nonbankruptcy court to construe the applicability of the automatic stay is a manifestation of the principle that a court has the jurisdiction to decide its own jurisdiction. *United States v. United Mine Workers,* 330 U.S. 258, 290–93, 67 S.Ct. 677, 694–96, 91 L.Ed. 884 (1947); *In re Related Asbestos Cases,* 23 B.R. at 527; 13A C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure 2d § 3536 (2d Ed.1984). Thus, even though a nonbankruptcy court cannot terminate, annul, modify, or condition the automatic stay, it can determine that the automatic stay does not apply, or the extent to which it does apply, to a matter before that court.

## II

The ultimate question posed in Franklin's motion to transfer is whether the

30. A minority of courts hold that an act in violation of the automatic stay is merely voidable, but not void ab initio. They reason that since violations of the automatic stay can be cured retroactively ("annulled") under section 362(d), an act in violation is not void unless the court declines to annul the stay and that the trustee's power under section 549 to avoid unauthorized postpetition transfers is more consistent with treating stay violations as voidable. *Sikes v. Global Marine, Inc.,* 881 F.2d 176, 178 (5th Cir.1989) (2–1 decision); *In re Oliver,* 38 B.R. 245, 248 (Bankr. D.Minn.1984).

31. Any such proceedings, however, ordinarily are valid with respect to nondebtor parties. *E.g., In re Related Asbestos Cases,* 23 B.R. 523 (N.D.Cal.1982) (Peckham, J.).

32. If the stay had not expired, it would be necessary to obtain relief from stay from the bankruptcy court in the Southern District of California where Franklin's case is pending because exclusive jurisdiction over the debtor's property and property of the estate is vested in that court. 28 U.S.C. § 1334(e).

adversary proceeding that he removed from the Sacramento County Superior Court to this bankruptcy court should now be transferred to the Southern District of California. The complementary questions posed by a motion to transfer a removed action are whether the action should remain in the bankruptcy court or be returned to the state court from whence it came.[33]

A

A bankruptcy adversary proceeding may be transferred to another district "in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. There must be a motion to transfer and a hearing on the motion. Fed.R.Bankr.P. 7087.

The parties focus their venue arguments on the convenience of the parties and reach opposite conclusions about which location affords a superior venue. Fidelity wants the litigation to remain in Sacramento and contends that the real estate development projects at issue are near Sacramento and that the defendant Franklin resides near Sacramento. Franklin wants to litigate in San Diego and counters that most of the records of the defendants are located in Southern California, that business dealings between the parties occurred there, and that not all key witnesses are located near Sacramento. Each side's argument has merit. It is premature, however, to reach the venue question.

The debate over which federal court is the better venue begs the question of whether the litigation should be in federal court at all. If the adversary proceeding were returned to state court, the parties would remain free to raise the same venue arguments there and litigate the question of whether to transfer the action from the Sacramento County Superior Court to the San Diego County Superior Court.

B

Common sense says that the threshold question is whether a federal bankruptcy court should try a fifteen-count, eight-defendant lawsuit in which the primary federal question is one count against a single defendant for a declaration that a state-law fraud claim should also be found to be nondischargeable fraud in the bankruptcy of that individual defendant. The other federal question merely requires applying one uncontested fact—that the bankruptcy court did not fix a deadline for proofs of claim—to settled law that all omitted debts as to which there is no other theory of nondischargeability asserted[34] are discharged in a bankruptcy in which no deadline for proofs of claim has been set before the creditor learns of the bankruptcy.[35]

It is relevant that the defendant forfeited exclusive federal jurisdiction over the nondischargeable fraud issue when he failed to schedule the plaintiffs, list the plaintiff as a creditor, or otherwise notify the plaintiff of his bankruptcy. The statute explicitly states that exclusive jurisdiction terminates in favor of concurrent jurisdiction if the debtor does not timely disclose the debt or inform the creditor of the bankruptcy.

The Sacramento County Superior Court plainly has concurrent jurisdiction to determine whether the putative fraud is nondischargeable under 11 U.S.C. § 523(a)(3)(B). The elements of section 523 nondischargeable fraud are essentially identical to the elements of the state-law fraud that is pled in another count of the complaint and are easily within the competence and experience of the state court. *Compare Kirsh,* 973 F.2d 1454, *with Seeger v. Odell,* 18 Cal.2d 409, 414, 115 P.2d 977, 980 (1941), *and* 5 B. Witkin, Summary of California Law: Torts § 676 (9th ed. 1988).

If Franklin particularly desires that his "home court" be the forum to determine the dischargeability question, he can still file an adversary proceeding in that court seeking a declaration that the debt is dischargeable. There is no legal impediment to the debtor being plaintiff in such an action. Nor is there a legal impediment to the existence of

33. Franklin was afforded an opportunity at the hearing on his motion to address the alternatives.

34. None are.

35. *See* note 7 *supra.*

parallel actions in state and federal courts addressing the same question. In such event, there would be a race to judgment.

C

Remand of removed actions in bankruptcy is permitted "on any equitable ground" as specified in 28 U.S.C. § 1452(b):

> (b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title.

28 U.S.C. § 1452(b).

Recognized equitable grounds include fairness, judicial economy, forum non conveniens, prompt and final resolution of disputes, and respect for state courts on questions of state law. *Chambers v. Marathon Home Loans (In re Marathon Home Loans),* 96 B.R. 296, 300 (E.D.Cal.1989).

The procedure for remanding a removed action is by way of motion to be resolved by the bankruptcy court: "A motion for remand of the removed claim or cause of action shall be governed by Rule 9014 and served on the parties to the removed claim or cause of action." Fed.R.Bankr.P. 9027(d).

A motion to transfer a removed action made under Rule 7087 necessarily places in issue the complementary question of remand regardless of whether remand is requested in the motion and satisfies Rule 9027(d)'s requirement for a motion. Thus, Franklin's motion to transfer implicitly raised the question of remand.

Alternatively, the court may raise the question of remand sua sponte. 11 U.S.C. § 105(a).[36] When the court raises the issue sua sponte, due process ordinarily requires that the parties be afforded an opportunity to be heard. Here, the court posed the question of remand during oral argument on the motion to transfer and gave the parties an opportunity to be heard.

Several of the commonly-recognized equitable grounds for remand apply here, each of which is an adequate, independent reason for remand. Judicial economy favors litigating the entire action in a single trial in a single forum. The dispute is sufficiently complex that the trial will be measured in weeks instead of days or hours. Fourteen of the fifteen counts in the complaint are noncore matters that the bankruptcy court cannot "hear and determine" without consent of all parties; instead, it must prepare a report and recommendation for de novo review in the district court. 28 U.S.C. § 157(c). The state court will be able to resolve the litigation in a single trial.

Respect for state courts on questions of state law is also pertinent. This litigation is predominantly a collection of California law issues that the California courts, a fortiori, are well-equipped to resolve. The few questions of federal law are neither novel nor complex.

Fairness is also a factor. Franklin plainly knew what his potential liabilities were and elected not to perform his end of the "bankruptcy bargain" by fully, candidly, and completely disclosing all his financial affairs and debts. In the context of fraud claims, the Congress gave an insight on fairness when it unambiguously provided that the failure to schedule a debt arguably based on fraud would transmute jurisdiction from exclusive federal jurisdiction to concurrent jurisdiction. It is fair to expect this litigation to be resolved in state court.[37]

36. That section provides, in pertinent part:

> ... No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

*11 U.S.C. § 105(a).*

37. As noted above, Franklin is nevertheless permitted to file his own section 523 actions in his "home court" and try to win a race to final judgment.

D

Abstention affords an independent basis for returning the action to state court.[38]

The Congress provided for discretionary abstention in 28 U.S.C. § 1334(c)(1):

> (c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).[39]

Discretionary abstention under this statute constitutes a legislative rejection of the common law rule that a court with jurisdiction must exercise the jurisdiction when requested to do so. *Swift v. Bellucci (In re Bellucci),* 119 B.R. 763, 771 n. 18 (Bankr. E.D.Cal.1990).

Courts balance twelve factors when contemplating discretionary abstention. *Eastport Assocs. v. City of Los Angeles,* 935 F.2d 1071, 1075 (9th Cir.1991); *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.),* 912 F.2d 1162, 1167 (9th Cir. 1990); *Republic Reader's Serv., Inc. v. Magazine Serv. Bureau, Inc. (In re Republic Reader's Serv., Inc.),* 81 B.R. 422, 429 (Bankr.S.D.Tex.1987).

Although the bankruptcy court should consider all twelve factors, one should not be beguiled into a false sense that a head count will yield the answer with mathematical certainty. Rather, the list serves to provide an intellectual matrix to guide the judge who considers abstention and to enable a reviewing court to ascertain whether there has been an abuse of discretion. *See Eastport Assocs.,* 935 F.2d at 1075.

Upon consideration of the twelve factors, which is set out in the margin,[40] the balance favors abstention.

* * * * * *

38. At oral argument on the motion to transfer the parties were afforded an opportunity to address this question.

39. The mandatory abstention prescribed by 28 U.S.C. 1334(c)(2) arguably applies to the state law counts. They are related to a case under title 11 but do not arise under title 11, could not have been commenced in a federal court absent bankruptcy jurisdiction, and can be timely adjudicated in a state forum of appropriate jurisdiction. The nondischargeable fraud count, however, is ineligible for mandatory abstention because it "arises under" title 11.

40. The first consideration, the impact on efficient administration of the bankruptcy estate, favors abstention. There is no apparent effect upon the administration of the estate from nondischargeability actions. There are no assets being administered.

The second consideration, the extent to which state law issues predominate over bankruptcy issues, strongly favors abstention. Fourteen of fifteen counts are purely state law counts. The debtor is only one of eight defendants. The primary bankruptcy issue has elements that are essentially identical to one of the state law issues.

The third consideration, the difficulty or unsettled nature of the applicable law, favors abstention. The bankruptcy issues are neither difficult nor complex.

The fourth factor, the presence of a related proceeding commenced in state court or another nonbankruptcy court, is neutral. The debtor reports that there is analogous litigation against him in a district court and that he is also defendant in other nondischargeability actions in bankruptcy court involving different parties and different facts.

The fifth factor, any basis for federal jurisdiction other than 28 U.S.C. § 1334, favors abstention. There is no other federal jurisdictional basis.

The sixth factor, the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, mildly favors abstention. The main case is a chapter 7 liquidation of an individual who reportedly has no assets.

The seventh and eighth factors, the substance rather than the "form" of the asserted core proceeding and the feasibility of separating state law matters from core bankruptcy matters, favors abstention. The elements of California civil fraud are essentially identical to the essential elements of nondischargeable fraud in bankruptcy.

The ninth factor, the burden on the bankruptcy court's docket, is neutral. Bankruptcy courts are sufficiently busy that a multi-week trial is difficult to accommodate, but it can be done if necessary.

The tenth factor, the likelihood that bringing the proceeding to the bankruptcy court involves forum shopping, is either neutral or mildly favors abstention. The removal was, of course, forum shopping, but probably not illegitimate forum shopping.

The eleventh factor, the existence of a right to jury trial, strongly favors abstention. There is a jury trial right on all the state law counts.

The twelfth factor, the presence in the proceeding of nondebtor parties, strongly favors abstention. The debtor is one of eight codefendants.

929

In sum, the bankruptcy court is the preferred forum, but not the only forum, for bankruptcy-related litigation. It enjoys that preferred status by virtue of limited grants of exclusive jurisdiction together with the automatic stay of actions in other forums and the bankruptcy removal statute. Nevertheless, much of federal bankruptcy jurisdiction is concurrent with state courts and should be construed in light of principles of comity and optimal judicial administration.

The state court from whence this adversary proceeding was removed has jurisdiction over all claims, including the federal bankruptcy claims, and is the appropriate forum for resolving the litigation. The automatic stay has expired. Considerations of equity favor remand of the action to state court rather than its retention in federal court. In addition to remand, discretionary abstention is appropriate. Accordingly, the motion to transfer will be denied. This court will abstain in favor of the state courts of competent jurisdiction and will remand the removed adversary proceeding to the Sacramento County Superior Court.

An appropriate order will issue.