**In re Darlene Sue ADKINS, Debtor.**

**Darlene Sue ADKINS, Plaintiff,**

**v.**

**Michael Lee ADKINS and Douglas C. Higginbotham, Defendants.**

**Bankruptcy No. 94–4510–BKC–3F7. Adv. No. 95–223.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Feb. 5, 1996.

James H. Post, Jacksonville, Florida, for Plaintiff.

Douglas C. Higginbotham, Jacksonville, Florida, for Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This proceeding is before the Court upon a Motion for Summary Judgment filed by Defendants, a Response to the Motion for Summary Judgment filed by Plaintiff, a Motion for Stay of Adversary Proceeding Pending Resolution of State Court Appeal filed by Plaintiff, and a Response to the Motion for Stay filed by Defendants.

Plaintiff and Defendant Adkins are former husband and wife whose marriage was dissolved by a Final Judgment of Dissolution of Marriage entered on October 12, 1994. The Final Judgment of Dissolution incorporated the provisions of a Stipulation and Agreement filed by the parties in the state court proceeding. Paragraph 9 of the Final Judgment of Dissolution is entitled "Equitable Distribution of the marital estate." It states in pertinent part:

The equitable distribution of the personal property shall be pursuant to the terms and conditions of the Stipulation and Agreement incorporated by reference in this Final Judgment. The equitable distribution is as follows:

a. The Husband shall receive a fifty (50%) percent share of the Wife's Profit Sharing Plan in the amount of $5,083.49 as of July 31, 1994.

The two additional subsections of paragraph 9 deal with time share condominium units owned by the parties and their division after the dissolution. However, subsection (a) is the dispute between the parties in this proceeding.

On October 17, 1994, Plaintiff filed her voluntary Chapter 7 petition in this Court, listing her former husband as an unsecured creditor. On January 27, 1995, an Order of Discharge was entered in Plaintiff's case by the bankruptcy court. Subsequently, on July 25, 1995 Defendant Adkins, through his attorney, Defendant Higginbotham filed a Motion for Entry of a Qualified Domestic Relations Order in state court, asking the state court to enforce the provision of the Final Judgment of Dissolution which awarded the former husband half of the former wife's profit sharing plan. Plaintiff objected to entry of a QDRO on the basis that the award to her former husband of 50% of her profit sharing plan amounted to a court ordered cash payment from her to her former husband and was, therefore, a debt owed her former husband which would have been discharged in her bankruptcy case.

Plaintiff filed the present proceeding in bankruptcy court on August 10, 1995 charging in her Complaint that Defendants' efforts to collect the award of 50% of the profit sharing plan was in violation of 11 U.S.C. § 524(a), because it was an attempt to collect a discharged debt. The Complaint asked the Court to enter a permanent injunction prohibiting Defendants from taking any further steps to enforce paragraph nine of the Final Judgment of Dissolution, and further asking this Court to make an independent determination that the sum awarded to the former husband in paragraph nine is a dischargeable debt that has indeed been discharged.

On August 17, 1995, a hearing was held in the state court on the Defendants' Motion for Entry of a QDRO. Plaintiff apparently advised the state court that she had filed this adversary proceeding in bankruptcy court, that she believed Defendants' actions to col-

lect the award of the profit sharing plan was in violation of § 524(a) and requested that the state court deny Defendants' Motion for a QDRO, pending resolution of this proceeding in the bankruptcy court. Notwithstanding the Plaintiff's arguments, the state court entered an Order Granting Motion for Entry of Qualified Domestic Relations Order and simultaneously entered the QDRO on September 8, 1995. Plaintiff has appealed both of these orders to the First District Court of Appeal. That appeal is currently pending.

In its Order Granting Motion for Entry of a QDRO, the state court judge expressly determined that the award of one half of the former wife's profit sharing plan to the former husband was not a "debt" which was discharged in the former's wife's bankruptcy. The state court judge specifically found that the profit sharing plan was a marital asset, both under Fla.Stat. § 61.075 and by agreement of the parties. The state court order states that the Final Judgment of Dissolution equitably distributed this marital asset between the parties and vested in the husband ownership of 50% of the plan benefits in the amount of $5,083.49 as of July 31, 1994. The state court judge stated in his Order,

> Paragraph 9 of the Final Judgment did not order or require the wife to make any cash payment whatsoever to the husband, and did not have the effect of creating any type of debt or personal liability from the wife to the husband. The only "debt" involved concerning the profit sharing plan is the obligation of the plan itself to pay benefits to Mr. and Mrs. Adkins, as discussed above. There being no debt owing the husband from the wife, the filing of bankruptcy by her and the listing therein of the husband as an unsecured creditor have no effect on the husband's present efforts to seek enforcement of paragraph 9 of the Final Judgment. The husband is not seeking to enforce or collect any *debt* owed him by the wife; rather he is seeking simply to obtain possession of an *asset* which belongs to him but is, in the hands of a third party. (emphasis in original).

The state court judge stated that he was relying on three Florida bankruptcy cases in making his determination that this was not a dischargeable debt. The QDRO entered ordered the Plan Administrator of the profit sharing plan to segregate the sum of $5,083.49, together with interest accrued since July 31, 1994 into a separate account in the same of Michael Lee Adkins. The profit sharing plan was ordered to pay the proceeds to Mr. Adkins at such time as his former wife becomes eligible to receive distribution under the plan.

Subsequent to the entry of the QDRO and its appeal, Defendants filed a Motion for Summary Judgment in this proceeding on December 19, 1995. Defendants want this Court to grant summary judgment for them on the basis that the profit sharing plan award is not a dischargeable debt, rather it is a marital asset. On December 29, 1995, Plaintiff filed a Motion for Stay of Adversary Proceeding Pending Resolution of State Court Appeal. Plaintiff has asked the Court to abstain from ruling in this case until after the state court appeal is complete since the issues are identical. Both of those motions are pending before the Court.

Neither party has raised the issue of collateral estoppel in this case, but upon review of the issues, the Court finds that collateral estoppel is a determining factor. In the Order Granting Motion for Entry of a QDRO, the state court made specific findings that the half interest in the profit sharing plan is a marital asset which had been equitably distributed, and was not a cash payment from the former wife to the former husband which would constitute a dischargeable debt. That is the identical issue which the parties are now seeking to have this Court decide.

 State courts have concurrent jurisdiction with bankruptcy courts to decide the dischargeability of debts in bankruptcy, especially marital debts pursuant to a dissolution of marriage. *See, Fidelity Nat'l Title Ins. Co. v. Franklin (In re Franklin),* 179 B.R. 913 (Bankr.E.D.Cal.1995); *In re Crowder,* 37 B.R. 53 (Bankr.S.D.Fla.1984); *Brock v. Barlow (In re Brock),* 58 B.R. 797 (Bankr. S.D.Ohio 1986); *Kuzminski v. Peterman (In re Peterman),* 5 B.R. 687 (Bankr.E.D.Penn. 1980); *In re Hanna,* 66 B.R. 389 (Bankr. S.D.Fla.1986). Thus, the state court in this

case had jurisdiction to make its finding that the half interest award in the profit sharing plan was not a dischargeable debt.

There are four requirements which must be met in order for collateral estoppel to apply to a particular issue. (1) The issue sought to be precluded must be the same as that involved in the prior action; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment. *Haize v. Hanover Ins. Co.*, 536 F.2d 576, 579 (3rd Cir.1976). The issue of the dischargeability of the half interest in the profit sharing plan in the case at bar easily meets all four of those requirements. The issue is the same as that determined in the state court order granting the QDRO, the issue was actually litigated in the state court, the judgment is valid and final and was rendered by a court of competent jurisdiction, and finally, the determination was essential to the decision to enter the QDRO. The state court had to determine the dischargeability issue, before it could determine whether the entry of a QDRO was appropriate. Accordingly, the Court finds that it is collaterally estopped from deciding the dischargeability of paragraph 9(a) of the Final Judgment of Dissolution because that issue has already been ruled on by a state court of competent jurisdiction.

It appears to the Court that there are no issues left in this adversary for it to decide. The dischargeability issue has been determined. Since the state court has decided that the amount was not a debt which was discharged in Plaintiff's bankruptcy, there could not have been a willful violation of the discharge injunction. Thus, the Court sua sponte pursuant to its powers under 11 U.S.C. § 105 is going to dismiss this adversary proceeding, without prejudice to either party, pending the resolution of the state court appeal.