In re Peter L. WALKER, Debtor.

In re Lawrence & Elaine
EMERTON, Debtors.

In re Dean & Elaine GOULD, Debtors.

In re Ronald ·A. NASTASI, Sr., Debtor.

In re Anne ARNOLD, Debtor.

In re James J. LaPLANTE, Debtor.

In re Michael & Wanda
KIRKER, Debtors.

In re George & Arlene CULOTTA,
Debtors.

In re Thomas H. WHITTAKER, Debtor.

In re June M. CALDWELL, Debtor.

Bankruptcy Nos. 93–11377–JEY, 93–12912–JEY, 94–11862–JEY, 93–11862–JEY, 92–11282–JEY, 95–10717–JEY, 92–10580–JEY, 93–13309–JEY, 94–10039–JEY and 89–10291–JEY.

United States Bankruptcy Court,
D. New Hampshire.

April 26, 1996.

Geraldine Karonis, Manchester, NH, for US Trustee.

Patrick F. Harrigan, Portsmouth, NH, for Debtor Peter L. Walker.

Victor Dahar, Chapter 7 Trustee, Manchester, NH.

Keith R. Jacques, Jensen Baird Gardner & Henry, Biddeford, ME, for York River Lobster Trap Co.

Marc L. Van De Water, Thomas, Utell, Van De Water & Raiche, Manchester, NH, for Debtors Lawrence & Elaine Emerton.

W. James Doyle, Cloutier, Beliveau & Fradette, Manchester, NH, for the Cadle Company.

Stan Hawthorne, Hawthorne Law Center, P.C., Rochester, NH, for Debtors Dean & Elaine Gould.

Richard Craven, Chapter 7 Trustee, Tyngsboro, MA.

American Frozen Foods, Loren H. Rosson Jr., Spaloss & Rosson, Nashua, NH, for Added Creditor.

Barry Levine, Wakefield, MA, for Debtor Ronald A. Nastasi, Sr.

Jeffrey Schreiber, Chapter 7 Trustee, Schreiber & Associates, Danvers, MA.

General Electric Supply Co. and Wesco Supply Co., Jay M. Niederman, Niederman & Stanzel, Manchester, NH, for Added Creditors.

Raymond J. DiLucci, Concord, NH, for Debtor Anne Arnold.

Timothy C. Day, Hampton Falls, NH, for Rockland Trust Co.

Chris J. Seufert, Franklin, NH, for Debtor James L. LaPlante.

Steven Notinger, Chapter 7 Trustee, Donchess & Notinger, Nashua, NH.

Randall W. Lane, Lane & Bentley, Keene, NH, and John P. Rab, Rab & Neiman, P.A., Keene, NH, for Debtors Michael and Wanda Kirker.

Dennis Bezanson, Chapter 7 Trustee, Portsmouth, NH.

William Gannon, Wadliegh, Starr, Peters, Dunn, & Chiesa, Manchester, NH, for Debtors George and Arlene Culotta.

Richard Erricola, Chapter 7 Trustee, Richard Erricola Company, Inc., Sutton, MA.

Thomas Morgan, Salem, NH, and Frank V. Hekiman, Salem, NH, for Debtor Thomas H. Whittaker.

Mae J. Lew, Boston, MA, for IRS.

David Broderick, Concord, NH, Office of the U.S. Attorney.

## MEMORANDUM OPINION

JAMES E. YACOS, Chief Judge.

A medieval scholastic would appreciate this opinion representing the undersigned judge's foray into the thicket of expanding case law on the simple question of whether a debtor should be able to reopen a chapter 7 no-asset bankruptcy case to add an omitted creditor to the schedules. Even more engrossing to said scholastic would be the truly metaphysical questions presented by that case law. The questions no longer revolve around how many angels "can dance on the head of a needle" but rather: "Are any debts discharged at the time an order is entered stating 'all dischargeable debts are discharged' and said order is proclaimed in a forest where no one is listening?"

The case law in this area is simply incomprehensible to most non-bankruptcy professionals, including state court judges [1], due to certain counterintuitive features of the bankruptcy law, and more importantly the ethereal nature of when a debt "is discharged" when a general discharge order under § 727 of the Bankruptcy Code is entered by a bankruptcy court.

By Orders dated February 16, 1996 (except *In re Caldwell*, which was entered on March 22, 1996) issued in each of the above-captioned cases, this Court granted the motions to reopen.[2] In each case, the motion was taken for submission after hearing to be decided together under a common legal issue. This Memorandum Opinion sets forth the reasoning and legal authority supporting the Orders.

The general discharge order (Official Form No. 18), issued pursuant to Bankruptcy Code § 524 provides as follows:

(1) The above-named debtor is released from all dischargeable debts.

(2) Any judgment heretofore or hereafter obtained in any court other than this court is null and void as a determination of the personal liability of the debtor with respect to any of the following:

(a) debts dischargeable under 11 U.S.C. Sec. 523;

---

1. See, e.g., *In re Hicks*, 184 B.R. 954 (Bankr. C.D.Cal.1995).

2. A copy of the Order on Motion to Reopen (February 16, 1996) that was entered in the

*Walker* case, which is in the same form as the Orders entered as to all debtors involved, but with the footnotes that were in the original Orders deleted, is attached hereto as Annex "A".

(b) unless heretofore or hereafter determined by order of this court to be nondischargeable, debts alleged to be excepted from discharge under clauses (2), (4), (6), and (15) of 11 U.S.C. Sec. 523(a);

(c) debts determined by this court to be discharged.

(3) All creditors whose debts are discharged by this order and all creditors whose judgments are declared null and void by paragraph 2 above are enjoined from instituting or continuing any action or employing any process or engaging in any act to collect such debts as personal liabilities of the above-named debtor.

Logicians, whether medieval or not, will recognize that paragraph 1 of this form order is a perfect tautology. The order discharges a particular debt only if it is *later* determined *somewhere* that no ground for nondischargeability under § 523 of the Bankruptcy Code exists as to that debt[3]. While technically accurate, it leads to confusion and muddled analysis to refer to debts being discharged *at the moment of entry* of the general discharge order[4].

There are ten no-asset chapter 7 cases pending before the Court (as captioned above) that address this issue. Although each case has its own particular factual idiosyncrasy, each is a no-asset chapter 7 case

which has been closed and came before the Court on a motion to reopen to add a previously omitted creditor. In none of these cases has the creditor involved, who received notice of the hearing on the motion to reopen, objected or raised any question as to any impropriety in the original omission of its debt from the schedules, or asserted that it was prejudiced by the delay. From my own review of the files and the debtors' explanations of the omissions, I can and do find that the failure to list the creditor or creditors involved in each case was an innocent mistake and entirely unintentional.

A brief summary of the individual cases is as follows:

*In re Peter L. Walker*

On May 10, 1993, the debtor filed a no-asset chapter 7 petition. The debtor listed $16,203 in assets and $74,663 in liabilities in his schedules. As in all no-asset chapter 7 cases, the unsecured creditors were instructed not to file a proof of claim[5]. Fed. R.Bankr.P. 2002(e). On June 18, 1993, the trustee filed a report of no distribution[6] and on October 27, 1993, a general discharge order was entered and the case was closed.

Two years later the debtor was served with a complaint for $5,114.48 plus attorney's fees, interest and costs from a trade creditor for amounts owing on six unpaid invoices. Of the total amount allegedly due, $4,601.78

---

3. Pursuant to Bankruptcy Code § 523(c)(1) certain nondischargeability grounds, i.e., fraud, embezzlement, malicious injury, and certain divorce matters, under subsections (2), (4), (6), and (15), must be raised in the bankruptcy court within a specified 60–day deadline period at the outset or they are lost. Creditors are given notice of this at the beginning of the case. This requirement applies whether or not a case is a "no asset" case and whether or not there is *also* a claims deadline given to creditors.

4. There are a total of 16 types of debt excepted from discharge under § 523(a) of the Bankruptcy Code: certain tax debts; debts arising from false representation or actual fraud related to extension of credit; debts neither listed nor scheduled; debts arising from defalcation in a fiduciary capacity; debts relating to alimony, maintenance and support; debts caused by willful and malicious injury; debts arising from restitution and fines payable to a government unit; student loan debts; debts arising from a liability incurred due

to debtor's driving while intoxicated; debts in which the debtor previously waived or was denied discharge; debts relating to certain FDIC-related frauds and defalcations; debts arising from criminal restitution; debts incurred to pay a federal tax; certain debts incident to divorce and separation; and debts for certain condominium fees.

5. The "Notice of Bankruptcy Petition" issued from the Clerk's Office stated: "At This Time There Appear To Be No Assets Available From Which Payment May Be Made To Unsecured Creditors. Do Not File A Proof Of Claim Until You Receive Notice To Do So." (Ct.Doc. No. 3). This also occurred in each of the other pending cases.

6. This report recognized valid exemptions and/or lack of equity that made liquidation of the listed assets for general creditors not feasible. The same determination was made in each of the other pending cases.

arose prepetition. The debtor contends that prior to receipt of the complaint in the state court action, he had not received any invoices or other notice of the creditor's claim. The debtor has raised as a defense in the Maine state action that the alleged debt was discharged in his bankruptcy case. As of February 16, 1996 there had been no hearings in the state court case.

On April 25, 1995, the debtor filed a motion with this Court asking that the bankruptcy case be reopened and the schedules amended to include this creditor. There has been no objection to the debtor's contention that the omission of this creditor was inadvertent. After appropriate briefing and a hearing, the Court took this matter under submission on June 8, 1995.

*In re Lawrence A. Emerton, Sr. and Elaine C. Emerton*

On October 14, 1993, the debtors filed a no-asset chapter 7 petition. The debtors filed their schedules on November 15, 1993 and listed $84,650 in assets and $189,408.69 in liabilities. The trustee filed a report of no distribution which was approved by the Court. A general discharge order was entered on March 23, 1994 and the estate was closed that same date. On June 16, 1995, the debtors filed a motion to reopen the bankruptcy case to add The Cadle Company as a creditor, which was heard on August 17, 1995. The obligation owed to The Cadle Company arises from a Promissory Note and Mortgage dated January 19, 1990 in the original face amount of $182,000 in favor of St. Mary's Bank. The bank foreclosed on the property securing the loan on or about June 7, 1991. The debtors assert that they were unaware there was a deficiency balance on the obligation.

The obligation was assumed by The Cadle Company which filed an action against the debtors in the Hillsborough County Superior Court alleging that the debt was not discharged by the bankruptcy because it was not listed in the debtors' schedules. (See Hillsborough County Superior Court, Northern District, Docket No. C–94–864). The debtors defaulted and judgement was entered for the plaintiff on March 13, 1995. The plaintiff filed a motion for weekly payments which was scheduled for hearing in the state court on June 14, 1995. At that hearing, counsel notified the state court judge that a motion to reopen the bankruptcy case to add The Cadle Company as a creditor would be filed in the bankruptcy court and both the debtors and creditor requested that the state court action be held in abeyance until a decision was issued in the bankruptcy court. As of February 16, 1996, there had been no action in the state court case. The creditor did not object to the debtors' motion to reopen.

*In re Dean and Elaine Gould*

The debtors, Dean and Elaine Gould, filed a petition for chapter 7 bankruptcy relief on September 6, 1994. The debtors listed $43,-728 in assets and $75,850 in liabilities in their schedules. The trustee filed his report of no assets on September 16, 1994. The Court entered a general discharge order in the no-asset case on February 24, 1995 and the case was closed that same date.

At the time the bankruptcy petition was filed, American Frozen Foods had filed a complaint against Dean Gould in Nashua Small Claims Court which was listed in the debtors' statement of financial affairs. The debt was not listed in Schedule F as a disputed unsecured claim nor was it included in the debtors' matrix. As a result, American Frozen Foods did not receive adequate notice of the debtors' petition or discharge.

On July 13, 1995, the debtors filed a motion to reopen the bankruptcy estate to add creditor American Frozen Foods to the creditors' matrix which was heard before the Bankruptcy Court on September 14, 1995. The creditor did not respond to the motion and neither the creditors nor the debtors appeared at the hearing.

*In re Ronald A. Nastasi, Sr.*

Ronald Nastasi filed a petition for chapter 7 bankruptcy relief on June 24, 1993. The debtor listed $900 in assets and $274,600 in liabilities. General Electric Supply Company and Wesco Supply Company, general trade creditors of the debtor, were not listed in the schedules. The debtor contends that he had no knowledge of the debts at the time of the bankruptcy petition and now disputes the

alleged claims. The trustee filed his report of no assets on August 11, 1993.

A general discharge order was entered in the debtor's no-asset case on March 29, 1994 and the case was closed on April 12, 1994. In October or November of 1994, General Electric Supply Company and Wesco Supply Company filed civil actions against the debtor for amounts allegedly owed. The debtor notified the creditors of the bankruptcy petition and on December 5, 1994 filed a motion to reopen to add the above two creditors to his schedules to more accurately reflect all of his debts and liabilities. Neither creditor responded to the debtor's motion. A hearing was held on September 14, 1995 at which only the debtor attended.

*In re Anne Arnold*

Anne Arnold filed a petition for chapter 7 bankruptcy relief on April 22, 1992. The debtor listed $3,901 in assets and $13,619.74 in liabilities in her schedules. Rockland Trust Company, a creditor of the debtor, was inadvertently not listed in the schedules.

The trustee filed his report of no assets on June 9, 1992. A general discharge order was entered in the debtor's no-asset case on October 28, 1992 and the case was closed as a no-asset case on that date as well. On August 21, 1995, the debtor filed a motion to reopen to add the above creditor to her schedules to more accurately reflect all of her debts and liabilities. The motion to reopen was heard in this Court on October 5, 1995. The attorney for the debtor appeared at this hearing and stated that the debt owed was a credit card debt in the amount of $4,800. He also indicated that there was a state court action filed by this creditor pending in the Hooksett District Court.

*In re James J. LaPlante*

James J. LaPlante filed a petition for chapter 7 bankruptcy relief on April 3, 1995. The debtor listed $3,800 in assets and $161,-884.69 in liabilities. Park Leasing Company, an unsecured creditor of the debtor, was not listed in the schedules. The trustee filed his no-asset report on May 16, 1995. A general discharge order was entered in the debtor's no-asset case on July 11, 1995 and the case was closed on August 25, 1995 as a no-asset case.

On September 28, 1995 the debtor filed a motion to reopen to amend Schedule F (creditors holding unsecured claims) and to add the above creditor to his schedules to more accurately reflect all of his debts and liabilities. The motion to reopen was scheduled by Order of this Court for hearing on October 19, 1995. The creditor did not attend the hearing and did not file a response to the motion.

At the hearing on October 19, 1995 the attorney for the debtor indicated that the debtor had supplied him with a list of creditors at the time the bankruptcy was filed. Along with the list of creditors, the debtor had also supplied the attorney with correspondence regarding the debt owed to Park Leasing Company. The attorney relied on the debtor's list of creditors only and did not list Park Leasing Company as a creditor due to a misunderstanding.

*In re Michael and Wanda Kirker*

Michael and Wanda Kirker filed their Chapter 7 bankruptcy petition on February 26, 1992. The debtors listed $3,950 in assets and $21,261.98 in liabilities in their schedules. A notice for the first meeting of creditors pursuant to § 341 was sent out on March 9, 1992. The notice was served on the creditors listed on the petition. The trustee filed his report of no assets on June 17, 1992. A discharge was entered on July 30, 1992.

On September 7, 1995 the debtors filed a motion to reopen their chapter 7 bankruptcy and allow them to list Rocky Mountain Bankcard as a creditor. At the hearing on October 19, 1995 the debtors testified that at the time their bankruptcy petition was prepared their attorney relied on a credit report regarding the debtors that they had supplied their attorney at the time he listed their creditors. At the time of the bankruptcy filing, the debtors' credit report indicated that the debt owed to Rocky Mountain Bank had been "charged-off" and listed a balance of $0 owed on that debt. The debtors testified that their attorney did not list this creditor on their petition because of the $0 balance.

The motion to reopen indicates that the debtors were recently contacted by a company named American Banco which indicated that they had purchased the charged-off debts of Rocky Mountain Bank and were seeking repayment of the credit card debt incurred by the debtors prepetition. The debtors further testified at the hearing on October 19, 1995 that since the beginning of 1995 they received approximately ten calls from this company requesting payment of a debt that was initially for $1,000 but now the company claims the debt has escalated to $2,600.

The debt now appears on the debtors' credit report. The debt listed on the credit report has prevented the debtors from receiving a credit card and also interfered with the debtors recently receiving a mortgage. The debtors testified that prior to the filing of the motion to reopen they offered to settle this debt for $1,000 but the credit card company refused.

### In re George and Arlene Culotta

George and Arlene Culotta filed a chapter 7 petition with this Court on November 29, 1993. The debtors listed $450,140 in assets and $3,978,055 in liabilities in their schedules. On March 30, 1994 the trustee filed a no-asset report. On May 17, 1995 a discharge of debtor was issued. This chapter 7 case was closed as a no-asset case on May 22, 1995.

On December 20, 1995 the debtors filed a motion to reopen this case. The debtors state in their motion that "The Debtor, George D. Culotta, has discovered a creditor from which the Debtor gave a personal guarantee on or about October of 1993 from which debtor did not have a contractual relationship with." The debtors now request the case be reopened so that they may list the debt and discharge the personal liability debt which was originally omitted from their schedules.

### In re Thomas H. Whittaker

The debtor, Thomas H. Whittaker, filed a petition for chapter 7 on January 7, 1994. The debtor listed $2,320 in assets and $121,425.50 in liabilities in his schedules. The trustee filed his report of no-assets on May 26, 1994. The Court entered a general discharge order in the no-asset case on November 29, 1994 and the case was closed that same date.

On January 29, 1996 the debtor filed a "Motion to Reopen and Add a Creditor". The debtor stated that through inadvertence he did not list Gene Duffy as an unsecured creditor. The motion requested that "In order to effect a full discharge of all of the Debtor's debts at the time of filing, the Debtor moves that the case be opened for the purpose of adding the above listed creditor." The motion also requested that "For the purpose of the creditor objecting to a discharge, Debtor hereby moves that the deadline for this creditor to object to discharge be ninety (90) days from the date of this motion and notice." The creditor was served with the motion but has not objected or asserted any prejudice from the delay.

### In re June M. Caldwell

June Caldwell filed her chapter 7 bankruptcy petition *pro se* on April 5, 1989. The debtor listed $1,285 in assets and $31,835 in liabilities. On April 12, 1989, the Court issued an order informing the creditors that no assets were available for distribution and proof of claims should not be filed. The trustee filed a report of no distribution on May 12, 1989. A general discharge order was entered on July 28, 1989.

On July 20, 1995, the debtor *pro se* filed a motion to reopen the case to add the Internal Revenue Service as a creditor. The I.R.S. was not listed as a creditor in the schedules although the debtor contends in her motion that the I.R.S. had constructive notice that the bankruptcy petition had been filed:

"Having informed the IRS. myself of the bankruptcy I was under the impression they would join as a creditor. This did not happen as they gave me instead a (90) day or so I thought, extension. By the time the above cited case was over, the IRS., was back claiming the owed tax. The amount I owed at the time was $1,752.00 dollars. It has grown to $3,000.00 + or −, due to interest and penalty. At this time I have not had a job for about two and a half years do [sic] to sickness and medical problems. I'm without any means

to pay this claim. I feel as I have been duped into a false sense of getting a fresh start."

On February 16, 1996 this Court issued an Order giving the I.R.S. thirty days within which to either consent to the reopening or to file an objection. On March 11, 1996 the I.R.S. filed a Notice of Consent to the Reopening and an Order Reopening the case was entered on March 22, 1996 in the same form as the Orders entered as to the other captioned debtors on February 16, 1996.

## I. THE QUESTIONS PRESENTED

The Court has taken pains to detail the facts involved in each of these cases in order that a proper construction of the applicable statute and rules may be done in the context of the many varied factual scenarios involving real problems that may be presented to debtors and creditors when a creditor is inadvertently omitted from the debtors' bankruptcy schedules.

Prior to the mid–1980s bankruptcy courts routinely set motions to reopen to add an omitted creditor for hearing on notice to the omitted creditor. If there was no indication that the creditor was intentionally omitted for some improper purpose, and that there was no prejudice to the omitted creditor, the Court would grant the motion and would give the omitted creditor a 60–day period within which to object to discharge (as to those discharge objection grounds which *must* be raised in the bankruptcy court) and then would try any such objections if filed. Creditors rarely objected to this practice and in the great majority of cases the omitted creditor's debt was discharged.[7]

In the present case, as indicated above, none of the omitted creditors have objected to the reopening of the bankruptcy case and the scheduling of their debts, nor have they objected to the prospect of the Court fixing a deadline within which to file objections to dischargeability of their debt.

By virtue of certain statutory and rule changes stemming from the Bankruptcy Reform Act of 1978, which will be detailed below, the evolving case law has presented a conflict in interpretation as to whether the prior routine practice of bankruptcy courts in these circumstances was or was not precluded by a close reading of the new statute and rule provisions. The questions presented by that evolving case law, and specifically presented by the present cases before this Court, are as follows:

(1) Does § 350 of the Bankruptcy Code still permit the reopening of a closed chapter 7 case to list an omitted creditor where no claims deadline was provided in the case before its closing?

(2) Will reopening of such a closed case afford the debtor and/or omitted creditor any meaningful relief within the contemplation of § 350 of the Bankruptcy Code?

(3) Can the Bankruptcy Court in such a case after reopening fix a new 60–day deadline for the omitted creditor who did not receive notice of the original deadline within which the creditor must raise those grounds for nondischargeability specified in § 523(c)(1) of the Bankruptcy Code?

In addition, some consideration must be given to the demonstrated difficulty of convincing the state courts in these cases that unlisted debts can be "discharged" in a bankruptcy case, a fact which experience indicates the state courts as well as the parties involved often simply do not believe is possible.[8]

## II. THE STATUTES INVOLVED

Section 350 of the Bankruptcy Code provides for closing and reopening of bankruptcy cases and provides in subsection (b) thereof that "a case may be reopened in the Court in which such case was closed, to administer assets, to accord relief to the debtor, or for other cause."

---

7. This discharge was effective as to debts arising under the *mandatory* grounds required to be asserted in the bankruptcy court, see 11 U.S.C. § 523(c)(1). Whether debts subject to other dischargeability grounds were also discharged would have depended upon the actual terms of the order fixing a deadline for objections to dischargeability after the reopening of the case.

8. See *In re Hicks,* footnote 1 supra.

Section 727 of the Bankruptcy Code provides for the entry of a general discharge order and provides in subparagraph (b) thereof the following key language as to the scope of the discharge granted: "Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date" of the commencement of the chapter 7 case.

Section 523 of the Bankruptcy Code deals with exceptions to discharge and in subparagraph (a) thereof details some 16 grounds for nondischargeability.[9] Except for four of these grounds, neither the Bankruptcy Code nor the Bankruptcy Rules require that either the debtor or the creditor raise the question of nondischargeability within any given time period nor do they require that those grounds be raised before the bankruptcy court at all. The non-mandatory grounds in the bankruptcy court can be raised before the case is closed, but if not raised they are left for resolution under the concurrent jurisdiction of the state courts when and if litigation on the debt involved is commenced following the bankruptcy.

A great deal of confusion in the case law arises from the not uncommon practice in bankruptcy court opinions to refer to debts subject to such possible "non-mandatory" grounds of nondischargeability as nevertheless having been "discharged" by the entry of the general discharge order under § 727 of the Bankruptcy Code. *See, e.g., In re Costa,* 172 B.R. 954 (Bankr.E.D.Cal.1994) ("In the ... 'no-asset, no-bar-date case' ... it is never untimely to file a proof of claim, with the result that all unscheduled debts (except section 523(a)(2), (4), and (6) debts) are discharged."); *In re Karamitsos,* 88 B.R. 122, 123 (Bankr.S.D.Tex.1988) (stating that because § 727 "acts as a complete discharge of all debts", and because § 523(a) "delineates debts that are excepted from discharge", therefore "[t]he scope of the discharge is final when entered."); and *In re Padilla,* 84 B.R. 194, 196 (Bankr.D.Colo.1987) (stating that because there was no claims bar date in the chapter 7 no-asset case, the exception to discharge for failure to list a debt does not

apply and "the debts which are sought to be added to the schedules by these debtors were, therefore, discharged ..."). These statements are only accurate in the sense that there is no *general* bar to discharge under 11 U.S.C. § 727 but whether a particular debt is or is not subject to a "non-mandatory" ground of nondischargeability under 11 U.S.C. § 523 is *not* finally resolved by the entry of the general discharge order.

Section 523(c)(1) does require that mandatory nondischargeability grounds based upon fraud, embezzlement, malicious injury, and certain divorce matters *must* be raised in the bankruptcy court and provides specifically as follows:

> Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), (6), or (15) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), (6), or (15) as the case may be, of subsection (a) of this section.

11 U.S.C. § 523(c)(1).

Section 523(a)(3) deals with the dischargeability of unlisted creditors and is at the bottom of the conflict and confusion currently existing in the case law relating to motions to reopen to add omitted creditors. That statute provides with regard to a general discharge order issued under 11 U.S.C. § 727 that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> \* \* \* \* \* \*
>
> (3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—
>
> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of

---

9. See footnote 3 supra.

claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and [10] timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request;

\* \* \* \* \* \*

11 U.S.C. § 523(a)(3).

## III. THE RULES INVOLVED

As appears from the statutes quoted above, the question of dischargeability of an unlisted debt is tied to the fact of a claims deadline. The Bankruptcy Code does not itself provide for the fixing of claims deadlines. Bankruptcy Rule 3002(c) provides that in a chapter 7 case creditors must file a proof of claim within 90 days after the first date set for a meeting of creditors. Bankruptcy Rule 2002(a)(8) provides that the Clerk shall give notice of the claims deadline to the creditors along with the original notice of the filing of the bankruptcy case. However, Bankruptcy Rule 2002(e) provides that in a chapter 7 case, in which it appears from the schedules that there are no assets from a which a dividend will be paid, the notice of the meeting of creditors may include a statement to that effect, i.e., that it is unnecessary to file claims, and that if assets subsequently are realized a further notice will be given for the deadline for filing of claims.[11]

The statute dealing with unlisted debts also refers to the question of whether the

creditor had any notice of the bankruptcy in time to file a complaint objecting to discharge regarding those grounds of nondischargeability specified in § 523(c)(1) of the Bankruptcy Code. The Bankruptcy Code does not itself establish a deadline for the filing of such complaints. Bankruptcy Rule 4007(c) provides that a complaint to determine dischargeability of any debt pursuant to § 523(c) of the Bankruptcy Code "shall be filed not later than 60 days following the first date set for the meeting of creditors" and that the Clerk is to give notice of that deadline to listed creditors along with the first meeting notice. The Bankruptcy Rule further provides that, "On motion of any party in interest, after hearing on notice, the Court may for cause extend the time fixed under this subdivision. The motion shall be made before the time has expired." The Bankruptcy Rule makes no provision for unlisted creditors who accordingly did not get notice of the complaint deadline.

## IV. LEGISLATIVE HISTORY

### Prior Bankruptcy Act

Prior to 1970 bankruptcy courts generally had no power to decide the discharge of a particular debt. The bankruptcy court determined whether a debtor was entitled to receive a discharge order but the question of the reach of that order to discharge a particular debt was left to subsequent state court litigation.

In 1970, Congress passed certain amendments to § 17 of the Bankruptcy Act, granting jurisdiction to the bankruptcy courts for the determination of the dischargeability of debts, which became law as Public Law 91–467, 84 Stat. 990, effective December 18, 1970. The legislative history of this enact-

---

**10.** The word "and" in 11 U.S.C. § 523(a)(3)(B) has been construed in the caselaw as "or" to correct a legislative error defeating the obvious legislative intent. *See In re Haga*, 131 B.R. 320, 323 (Bankr.W.D.Tex.1991), *quoting In re Padilla*, 84 B.R. 194, 196 (Bankr.D.Colo.1987) (emphasis in original) ("Although written as conjunctive, this phrase should be read in the disjunctive. '[T]o comport with legislative intent, § 523(a)(3)(B) shall be read as requiring the prevention of filing a proof of claim *or* a complaint to determine dischargeability.' ")

**11.** Statistically well in excess of 90 percent of all chapter 7 cases filed in the bankruptcy courts in this country end up being "no-asset" cases in which a claims deadline accordingly is never given to the creditors before the case is closed. *See In re Hicks*, 184 B.R. 954 (Bankr.C.D.Cal. 1995), *citing* Res. & Dev. Dept., *Analysis of Case Processing Measures*, U.S. Bankr. Court—Central District of California, Attachment I (August 1994) ("No-asset cases constitute 95% of all Chapter 7 filings nationally.")

ment is set forth in a comprehensive article by Professor Vern C. Countryman, who was one of a small group of drafters that negotiated and drafted the final bill. *See* Countryman, *The New Dischargeability Law,* 45 Am. Bankr.L.J. 1 (Winter, 1971).

The new law gave broad jurisdiction to the bankruptcy court for the first time to deal with applications to determine dischargeability of certain debts under § 17 of the Bankruptcy Act. Either the debtor or the creditor could request such a determination. However, if no request was filed with the bankruptcy court before the case was closed, then except for three discharge grounds the issue could thereafter still be litigated in the state courts when the creditor sued to collect the debt. Those particular grounds were reserved for what Professor Countryman refers to as the "exclusive jurisdiction" [12] of the bankruptcy court. Those three grounds were § 17(a)(2) (obtaining money or property by false pretenses); § 17(a)(4) (fraud or embezzlement while a fiduciary); and § 17(a)(8) (willful and malicious injury).

### *Present Bankruptcy Code*

In 1978, Congress repealed the Bankruptcy Act and replaced it with the Bankruptcy Code. Pub.L. No. 95–598, 92 Stat. 2549, now codified at 11 U.S.C. § 101 *et seq.* (enacted Nov. 6, 1978, eff. Oct. 1, 1979). Pertinent to this matter, the 1978 legislation deleted section 17(c)(2) of the Bankruptcy Act and replaced it with section 523(c)(1) of the Bankruptcy Code. Sections 523(a)(2), 523(a)(4), and 523(a)(6) of the Bankruptcy Code coincide with the prior sections 17(a)(2), 17(a)(4), and 17(a)(8) of the Bankruptcy Act and, as indicated by the language of section 523(c)(1) quoted above, are subject to the so-called "exclusive" jurisdiction of the bankruptcy court.

As mentioned above, the dischargeability of these types of debts must be raised in, and can only be determined by, the bankruptcy court. *See* 11 U.S.C. § 523(c)(1), as amended by the Bankruptcy Reform Act of 1994 (eff. Oct. 22, 1994).

In 1994, Congress further amended the Bankruptcy Code and, pertinent to this matter, added section 523(a)(15), which enhances the protection afforded by the bankruptcy laws for divorce obligations. *See* Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4106, Section 304 (eff. Oct. 22, 1994). Section 523(a)(15) was added to the types of debts as to which dischargeability may only be determined by the bankruptcy court. *See* 11 U.S.C. § 523(a)(c)(1), as amended by the Bankruptcy Reform Act of 1994 (eff. Oct. 22, 1994).

### V. *RATIONALE UNDERLYING RELIEF FOR CHAPTER 7 DEBTORS*

In *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934), the Supreme Court established the often-quoted "fresh start" rationale for chapter 7 bankruptcy relief. This case involved a post-discharge garnishment action in the state court by a creditor that had been scheduled in bankruptcy by the debtor. The bankruptcy court (then the federal district court) adjudicated the debtor bankrupt and, subsequently, a creditor sought to garnish the debtor's wages for payment of a claim in the state court. The bankruptcy court enjoined the creditor from further prosecution of his garnishment action, and an appeal was taken and the order was affirmed by the appellate court.

The Supreme Court held, contrary to the usual procedure then existing (which allowed state courts to determine the dischargeability of specific debts after a debtor obtained a general discharge from the bankruptcy court) that in this exceptional case the bankruptcy court properly enforced its general discharge order by enjoining the creditor from pursuing the state court action. The Supreme Court noted:

> One of the primary purposes of the bankruptcy act is to 'relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes.' This purpose of the act has been

---

**12.** Countryman, *supra* at 26.

again and again emphasized by the courts as being of public as well as private interest, in that it gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt. The various provisions of the bankruptcy act were adopted in the light of that view and are to be construed when reasonably possible in harmony with it so as to effectuate the general purpose and policy of the act. Local rules subversive of that result cannot be accepted as controlling the action of a federal court.

*Local Loan Co. v. Hunt*, 292 U.S. 234, 244–245, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934) (citations omitted). The Supreme Court observed that, at least in the particulars of the case before it, it would be costly for the debtor to proceed in the state forum:

> The alternative of invoking the equitable jurisdiction of the bankruptcy court was for respondent to pursue an obviously long and expensive course of litigation, beginning with an intervention in a municipal court and followed by successive appeals through the state intermediate and ultimate courts of appeal, before reaching a court whose judgment upon the merits of the question had not been predetermined. The amount in suit is small, and ... such a remedy is entirely inadequate because of the wholly disproportionate trouble, embarrassment, expense, and possible loss of employment which it involves.

*Id.* at 241–242, 54 S.Ct. at 698 (citations omitted).

## VI. REOPENING "NO–ASSET" CASE TO ADD OMITTED CREDITOR

■ The current case law in this area can best be described for the most part as an exercise in "futility". A number of courts, starting with *In re Anderson*, 72 B.R. 495 (Bankr.D.Minn.1987), noted that the changes in the 1978 Bankruptcy Code and the related Bankruptcy Rules had the effect of permitting an unlisted debt, in a chapter 7 no-asset case where there was no claims bar deadline, to pass through the bankruptcy unaffected by the omission. *See e.g. In re Mendiola*, 99 B.R. 864, 868 (Bankr.N.D.Ill.1989) ("Again, however, scheduling makes no difference to the outcome.... Reopening this case, therefore, will not accord the Debtor the relief she seeks. Scheduling the debts she wants to schedule will not affect whether or not those debts are discharged.") These courts reasoned that although the debt was not rendered nondischargeable *solely* because of the omission,[13] the debt was left as either dischargeable or nondischargeable depending on whether any *other* grounds under § 523(a) pertained to that debt, resulting in

---

13. The treatment of omitted debts is thoroughly analyzed and discussed in a recent law article authored by a bankruptcy law clerk and a bankruptcy judge. *See* Helbling and Klein, *The Emerging Harmless Innocent Omission Defense To Nondischargeability Under Bankruptcy Code § 523(a)(3)(A): Making Sense Of The Confusion Over Reopening Of Cases And Amending Schedules To Add Omitted Debts*, 69 Am.Bankr.L.J. 33 (Winter, 1995). In explaining section 523(a)(3), the authors write:

"In other words, § 523(a)(3) divides all omitted prepetition debts into three categories. First, under § 523(a)(3)(A) there are omitted debts that are nondischargeable solely because of the omission. Second, under § 523(a)(3)(B) there are omitted debts that would be discharged unless a creditor establishes, in a timely filed action, that a particular debt was incurred by nondischargeable fraud, embezzlement, larceny, breach of fiduciary duty, or willful and malicious conduct under § 523(a)(2), (4), or (6). Finally, by implication, there are debts that fit into some other category of nondischargeable debt (e.g. alimony and child support), which are always nondischargeable regardless of whether they are omitted.

"Stated alternatively, if an otherwise dischargeable omitted debt meets the rather specific requirements of § 523(a)(3)(A), then it is not discharged. But, if such a garden variety omitted debt does not so qualify, then it is discharged because no other provision of the Code makes a debt nondischargeable merely because it is omitted. Otherwise nondischargeable debts fall into two categories. Omitted debts that would be nondischargeable on account of fraud, embezzlement, larceny, breach of fiduciary duty, or willful and malicious conduct are discharged if the creditor has notice or actual knowledge of the bankruptcy case in time to file a timely proof of claim and in time to bring a timely nondischargeability action under § 523(a)(2), (4), or (6) and does not do so. All other nondischargeable debts remain nondischargeable."
*Id.* at 39–40 (footnote omitted).

an open-ended question that could not be ultimately determined until the issue was raised in some future litigation.[14]

In the *Anderson* case, the debtor had listed the creditor, but the address was apparently listed incorrectly and the creditor never received any notices of the bankruptcy. After the bankruptcy discharge, the creditor initiated an arbitration proceeding to collect on the debt. Two years later, the creditor filed a complaint to determine dischargeability with the bankruptcy court. Although the case had already been closed, a local rule permitted the filing of a complaint to determine dischargeability of a debt without a reopening of the bankruptcy case. *Anderson* at 496, fn. 2. The debtor responded by not only contesting the adversary proceeding but by separately filing a motion to reopen to amend the schedules to correct the address of the creditor. The Court determined that since the reopening to correct the address of the creditor in a no-asset chapter 7 case would not affect the dischargeability of the debt in question one way or another, as a matter of law, it would be "futile" to reopen and therefore the Court denied the separate motion to reopen and presumably proceeded to decide the adversary proceeding regarding the dischargeability of the debt in question.[15]

The *Anderson* approach was also taken, and explicated at greater length in *In re Mendiola*, 99 B.R. 864 (Bankr.N.D.Ill.1989).

*See also In re Beezley*, 994 F.2d 1433, 1434 (9th Cir.1993) ("After such a case [no asset chapter 7] has been closed, dischargeability is unaffected by scheduling; amendment of Beezley's schedules would thus have been a pointless exercise.")[16]; *American Standard Ins. Co. v. Bakehorn*, 147 B.R. 480, 483 (N.D.Ind.1992), *In re Stecklow*, 144 B.R. 314, 317 (Bankr.D.Md.1992), *In re Tucker*, 143 B.R. 330, 334 (Bankr.W.D.N.Y.1992), *In re Peacock*, 139 B.R. 421, 422 (Bankr.E.D.Mich. 1992), *In re Thibodeau*, 136 B.R. 7, 10 (Bankr.D.Mass.1992), *In re Hunter*, 116 B.R. 3, 5 (Bankr.D.D.C.1990); and *In re Thibodeau*, 136 B.R. 7, 10 (Bankr.D.Mass.1992) ("[O]nce the time for filing complaints to determine dischargeability has lapsed, the Court cannot extend the time. Therefore, reopening a case to schedule an omitted debt will not affect the debt's dischargeability. And, as Judge Margaret A. Mahoney stated in *Karamitsos*, [88 B.R. 122, 123 (Bankr. S.D.Tex.1988)] 'I do not allow meaningless reopenings.' ")

In the *Mendiola* case, the Court discussed alternatives to reopening a bankruptcy case in order to have the dischargeability of a debt determined:

There are three ways to litigate dischargeability after a case is closed. First, if a creditor pursues a lawsuit on the claim, the debtor can assert the bankruptcy discharge as an affirmative defense and the

**14.** In the great majority of cases the creditor concedes the dischargeability and no further litigation is actually instituted post-bankruptcy. It is for this reason that I believe that courts commonly refer to the general discharge order as "discharging" such debts.

**15.** The *Anderson* opinion does not itself refer to the further progress or outcome of the adversary proceeding but is taken up entirely instead with the "reopening to add a creditor" question. It is a supreme irony that the *Anderson* decision, which spawned the succeeding line of "reopening is futile" decisions itself involved granting relief to both the debtor and an omitted creditor to determine the dischargeability of the omitted debt!

**16.** The *Beezley* decision was rendered by a 3–judge panel, with a 2–judge majority and 1 judge concurring. The majority decision was a single paragraph and affirmed the lower court on grounds other than that briefed to the appellate court. (The bankruptcy court had denied the

motion to reopen on the finding that the omission of the creditor was intentional, and the Bankruptcy Appellate Panel affirmed.) The majority of the Court of Appeals panel affirmed, finding no abuse of discretion by the bankruptcy court on the basis that there was no "cause" for reopening, since the listing or not listing of a debt has no effect on the dischargeability of that debt. The concurring opinion of eight pages notes that the question whether to reopen is a "complicated affair" that requires close attention to the difficult language of sections 523 and 727 of the Bankruptcy Code" and observes that the simple analysis of the per curiam majority under 523(a)(3)(A) and (B) misses the mark in no-asset chapter 7 cases where there never is a claims bar date. The concurring judge concludes: "Whatever else might be said, it is incontrovertible that the bankruptcy court did not rely on the reasoning that underlies the per curiam opinion in concluding that Beezley's motion should be denied." This procedural history of *Beezley* weakens its force in my opinion for those grappling with the issue in other Circuits.

court with jurisdiction over that lawsuit can decide whether the debt falls within any of the exceptions to discharge. Second, under Bankruptcy Rule 4007(b) either the Debtor or the creditor can move to reopen this case for the purpose of filing a complaint to determine dischargeability. Third, the Debtor can bring action in this Court to enforce the discharge injunction against a creditor attempting to collect discharged claims, which is contained in 11 U.S.C. § 524(a). The virtue of any of these procedures, as opposed to a motion to reopen to amend schedules, is that it will focus on the real dispute (if there is a real dispute) between the parties—the dischargeability of the debt.

*In re Mendiola,* 99 B.R. 864, 870 (Bankr. N.D.Ill.1989).

A number of Courts have found justification for granting motions to reopen in this context notwithstanding the "futile" analysis developed in the *Anderson–Mendiola* line of decisions. *See, e.g., In re Hicks,* 184 B.R. 954, 959 (Bankr.C.D.Cal.1995) ("... *Beezley* is misguided in its dictum about the pointlessness of reopening and amending the schedules.... Clerk's ministerial entry of a discharge and closing of the case should not prevent that debtor from taking reasonable steps to rectify that failure and to clarify the debts covered by the discharge."); *In re Woolard,* 190 B.R. 70, 74–75 (Bankr.E.D.Va. 1995) ("The practical difficulty ... with refusing to reopen a closed case to add an omitted creditor is that many collection attorneys, and a significant number of state court judges, assume that a debt not listed on a debtor's schedules is *per se* excepted from the debtor's discharge...."); *In re McKinnon,* 165 B.R. 55 (Bankr.D.Me.1994) ("... amending the schedules to add a prepetition creditor or creditors ... does provide important relief to Chapter 7 debtors who wish to ensure that their discharge is, and will remain, as comprehensive as possible.").

Three federal Courts of Appeal have ruled that motions to reopen to add omitted creditors in this context should be granted if the omission was inadvertent, innocent, and no prejudice resulted to the creditor from the delay, but none of these decisions focused

upon or discussed the language of § 523(a)(3) and simply assumed, as do the state courts and the parties, that an unlisted debt could not be discharged. *See Matter of Stark,* 717 F.2d 322 (7th Cir.1983); *In re Rosinski,* 759 F.2d 539 (6th Cir.1985); and *Matter of Baitcher,* 781 F.2d 1529 (11th Cir.1986).

## VII. REOPENING THE CASE UNDER § 350 "TO ACCORD RELIEF TO DEBTOR OR FOR OTHER CAUSE"

Although I agree that listing an omitted creditor on the schedules in a no-asset case has no legal significance *per se* with regard to the dischargeability of a creditor's claim, to deny a debtor's motion to reopen to list a creditor in such a case on that ground ignores the broader practical need for granting the relief requested—which is particularly inappropriate in the face of the broad language of § 350 of the Bankruptcy Code in that regard.

It must be remembered that the factual context of a motion to reopen is generally the factual context before the Court in these cases. Several years after the bankruptcy case is closed, a creditor brings an action in state court against the debtor for an inadvertently omitted prepetition debt. By granting motions to reopen in cases where the prior omission of a creditor was inadvertent and innocent, and where no prejudice would result to the creditor, the bankruptcy court can give relief to the debtor, the creditor, and the state courts which is meaningful entirely apart from the narrow legal question of § 523(a)(3) dischargeability and indeed furthers the underlying congressional purpose. As the Sixth Circuit has noted, § 350(b) of the Code not only provides for according relief to the debtor but also for reopening "for other cause" and that the latter ground "can be found when the failure to schedule a debt was simply inadvertent and did not prejudice the creditor in any way." *In re Soult,* 894 F.2d 815, 817 (6th Cir.1990).

Granting the debtor's request to add creditors to the schedules also ensures proper notice in the event the case is later reopened to administer previously undiscovered as-

sets [17]. By denying the debtor's motion to reopen to add a creditor, the Court forces the debtor to postpone acting on the omission until and unless the case is reopened to administer newly discovered assets. In contrast, permitting the motion to reopen to add a creditor fulfills the debtor's legal duty to list all creditors under Bankruptcy Code § 521(1) and Bankruptcy Rule 1007, and will include the creditor in any future distribution in the event of newly discovered assets, and does no harm to the creditor. *In re McKinnon*, 165 B.R. 55, 57 (Bankr.D.Me.1994).

By this process, the "honest but unfortunate debtor" really does get the "fresh start" to which he is entitled, without the worries that at some indefinite time in the future the omitted prepetition creditor will "come out of the woodwork" to bedevil him in another judicial arena.[18] *See In re Waugh*, 172 B.R. 31 (Bankr.E.D.Ark.1994), *citing In re Candelaria*, 121 B.R. 140, 144 (E.D.N.Y.1990). As the *McKinnon* court stated:

> If a debtor is not permitted to reopen a no-asset Chapter 7 case to add creditors to his schedules by amendment, those creditors will not receive the Rule 3002(c)(5) notice when it issues. If they do not receive the notice, do not file a proof of claim, and do not otherwise come by "notice or actual knowledge" of the case in time to file a proof of claim within the designated period, their claims will not be discharged. 11 U.S.C. § 523(a)(3)(A) and (B).

> To say that instances of uncovering previously unadministered assets in a formerly no-asset case Chapter 7 case are "rare" and, therefore, that the debtor should not be permitted to burden the court with reopening and amendment merely to buy "peace of mind," *In re Thibodeau*, 136 B.R. at 8 n. 2, is unsatisfactory. Debtors are entitled to a fresh start, free from the economic and emotional burden of prepetition debt. *Local Loan v. Hunt*, 292 U.S.

234, 243, 54 S.Ct. 695 [698–699], 78 L.Ed. 1230 (1934).

\* \* \* \* \* \*

To say that the debtor's interests are meaningfully served by permitting additions to the schedules of liabilities only if and when the case is reopened to administer assets, *In re Thibodeau*, 136 B.R. at 9, ignores practical considerations pertinent to not only Chapter 7 debtors, but to case administration as well. It is unrealistic (and unfair) to require debtors (and their counsel) to defer acting to amend the schedules unless and until a case is reopened to administer of newly-discovered assets. They are entitled to do what they can to ensure a comprehensive discharge, get the case behind them, and get on with their lives.

*In re McKinnon*, 165 B.R. 55, 57–58 (Bankr. D.Me.1994) (footnote omitted).

There are also the rights of the creditor to consider. The creditor gets the benefit of receiving any subsequent notice that would be sent if assets are discovered. *Cf. In re Daniels*, 51 B.R. 142, 143 (Bankr.S.D.Ohio W.D.1985) ("The two interests of a creditor which are to be guarded in a reopening situation are (1) the right to participate in a dividend, and (2) the right to obtain a determination of dischargeability.") "Protecting a creditor's right to participate in the bankruptcy process is a significant policy of the Bankruptcy Act." *In re Shaheen*, 174 B.R. 424, 428 (E.D.Va.1994), *citing In re Dewalt*, 961 F.2d 848, 850 (9th Cir.1992); *see also In re Birkett v. Columbia Bank*, 195 U.S. 345, 350–51, 25 S.Ct. 38, 39–40, 49 L.Ed. 231 (1904).

The state courts get relief by having a comprehensive and comprehendable list of the debts subject to the general discharge order, and by having another judicial venue to share the load of resolving disputes about the dischargeability of debts. The state court, which has no "event of record" regarding the omitted creditor's claim, and which is

---

**17.** If the trustee discovers assets which may result in a payment of dividend to the creditors, the scheduled creditors are notified and required to file a proof of claim within 90 days of the notice. Fed.R.Bankr.P. 3002(c)(5).

**18.** See discussion below, Sections VIII & IX, re treatment of dischargeability questions after reopening.

generally unfamiliar with bankruptcy law, and particularly unfamiliar with the convoluted statutory analysis regarding the scope of the bankruptcy discharge, the exceptions to discharge, and the legal effect of omitting a creditor in a no-asset chapter 7 case, must utilize its time and resources to thrash out the interplay between § 727(b), § 523(a)(3), and § 523(c) to determine whether or not the debt before the court survived the bankruptcy discharge.

As the bankruptcy court in *Hicks* observed in this regard:

> The state court's action here is understandable in light of the doctrinal confusion created by the bankruptcy courts' failure to distinguish between the debtor's burden of going forward, by listing debts and notifying creditors, and the creditor's burden to prove fraud or other nondischargeability grounds. The present case is only one of many on the Court's recent hearing calendars reflecting the inability of both state and federal district courts to make sense out of the *Beezley* implications. This confusion suggests that the state courts may not be the "best" forum to determine whether an unscheduled debt is excepted from the discharge under § 523(a)(3), despite contrary conclusions in other jurisdictions. *E.g., In re Guzman,* 130 B.R. 489, 491 (Bankr.W.D.Tex.1991) (Clark, J.) (denying motion to reopen to add omitted creditors, based in part on conclusion that state court provides best forum for determination of dischargeability). At a minimum, however, the state courts need a simple way to determine whether a particular debt was dealt with in a bankruptcy case.

> \* \* \* \* \* \*

> Proving up the scope of a bankruptcy discharge is necessarily different. For res judicata purposes, the bankruptcy judgment is the discharge order. This computer-generated form does not specify the claims covered by the discharge. Rather, the schedules and creditor list are supposed to identify all prepetition claims within the scope of the discharge. As the usual markers for determining the applicability of res judicata are absent, the only

available substitutes for identifying adversarial parties and "litigated" claims are the schedules and creditor matrix. Thus, if the debt and the creditor are not scheduled, then the state courts usually conclude, as here, that res judicata does not apply at all. That they are wrong as a theoretical matter is of no comfort to a debtor who faces the prospect of having to litigate a claim that should have been barred by the discharge.

*In re Hicks,* 184 B.R. 954, 960–61 (Bankr. C.D.Cal.1995).

Bankruptcy Judge Fenning, who authored the *Hicks* decision, has subsequently noted that omitted *creditors* are also confused by the discharge of non-listed debts: "Omitted creditors find it hard to believe that their claims have been discharged when they did not receive timely notice due to the debtor's failure to schedule them properly." *Bankruptcy Court Decisions, Weekly News and Comment,* V. 28, Iss. 5, p. A4 (Jan. 2, 1996) (LRP Publications). Judge Fenning continues: "So do state courts, which frequently allow omitted creditors to continue enforcement efforts, notwithstanding the discharge." *Id.* As a result, what may be a relatively common issue in the bankruptcy court, resolved in a fifteen minute hearing, becomes an element of judicial backlog in a state court proceeding.

Either the state court or the bankruptcy court must make a determination that the debt was or was not discharged, although the bankruptcy court can easily facilitate a process that often becomes unduly prolonged in other forums. Judge Fenning also commented on this aspect of the problem in the *Hicks* decision:

> "Amendment of schedules to add omitted creditors is not legally required to bring a debt within the scope of the discharge.... But reopening a Chapter 7 case to allow amendment does not involve much time or effort.... especially compared with the complications arising from closing the bankruptcy courthouse doors.... Bankruptcy courts should simplify—rather than complicate—the job of the state courts and others ..."

*In re Hicks,* 184 B.R. 954, 961–62 (Bankr. C.D.Cal.1995).

Finally, there is nothing to *prevent* the bankruptcy court from entertaining the motion to reopen and amend, and to do so allows the bankruptcy court to "clear the waters" so the parties may proceed without the expenditure of time and money to educate the state court in a rather arcane area of law. It is this Court's opinion that to provide this relief is not a futile exercise of power but in fact a very appropriate exercise of power to give an honest debtor a fresh start. This approach will "accord relief to the debtor" as envisioned by Section 350 of the Bankruptcy Code. It will also result in the listing of the creditor and its debt on the schedules, as required by law, *see* Bankruptcy Rule 1007(a)(1), which independently constitutes "cause" for reopening under § 350.[19] The added creditor will be encompassed in any future notice that may issue due to the discovery of assets of the debtor, and will be given an opportunity to schedule an examination of the debtor and his affairs pursuant to Bankruptcy Rule 2004. This ability of the creditor to participate in important bankruptcy processes constitutes yet another "cause" for reopening under § 350.[20]

■ In sum, it is within the bankruptcy court's discretion to reopen the case to add an omitted creditor, and as long as there is no harm to the previously omitted creditor this Court will exercise its discretion to do so.

## VIII. DISCHARGE OF DEBTS: "NON-MANDATORY" GROUNDS

Having determined that the Court should grant the reopening of the cases involved to permit the adding of the omitted creditors to the schedules, the question then becomes whether the Court should or should not provide some procedure for the determination of the dischargeability of the omitted debts in the bankruptcy court. This section of the opinion will deal with those grounds for nondischargeability specified in § 523 of the Bankruptcy Code that are *not* required to be raised in the bankruptcy court, i.e., the "nonmandatory" grounds of nondischargeability. The succeeding section of this opinion will deal with those grounds of nondischargeability which pursuant to § 523(c)(1) *are* required to be adjudicated in the bankruptcy court.

■ With regard to the *non-mandatory* grounds we have seen that in the normal situation in which the debt is actually scheduled by a debtor the question of nondischargeability of the debt on those grounds awaits action initiated by either the debtor or creditor to raise the issue or the question of nondischargeability will pass through the bankruptcy case unresolved, i.e., the debt is only discharged upon a subsequent determination by either a state court or the bankruptcy court that the debt is not within the parameters of one of those exceptions to discharge. *See Advisory Committee's Note (1983) to Bankruptcy Rule 4007* (Jurisdiction to determine the dischargeability of a non–§ 523(c) type of debt "is held concurrently by the bankruptcy court and any appropriate nonbankruptcy forum."); *In re Banks–Davis,* 148 B.R. 810, 813 (Bankr.E.D.Va.1992), *citing Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), *In re Cheripka,* 1991 WL 276289 (3rd Cir.1991) (not published), and *In re Bercier,* 934 F.2d 689 (5th Cir. 1991) ("[T]he bankruptcy court is not the sole forum that can hear complaints to determine dischargeability.... [C]omplaints arising under other subsections of § 523(a) [non-

**19.** *See In re Soult,* 894 F.2d 815, 817 (6th Cir. 1990) ("*Rosinski* [759 F.2d 539 (6th Cir.1985)] teaches that 'other cause' can be found when the failure to schedule a debt was simply inadvertent and did not prejudice the creditor in any way.")

**20.** The creditor in each of the pending cases was given 30 days from the date of the order granting reopening to schedule a Rule 2004 examination if the creditor so desires. *See "Order on Motion to Reopen",* ¶ 4 (Feb. 16, 1996) (Annex "A"). The 30 days provided is to approximate the time that normally runs from the filing of a bankruptcy case to the date of first meeting of creditors. *See* Bankruptcy Rule 2003(a) (first meeting to be set within 20 to 40 days of filing). In this manner this Court can implement the congressional intent to give a creditor opportunity to question a debtor seeking to discharge an obligation owing to the creditor, an opportunity that the creditor would have had in the original bankruptcy proceeding if the creditor had been properly and timely listed on the bankruptcy schedules by the debtor.

§ 523(c) type debts] ... can be brought in nonbankruptcy (state) forums with which the bankruptcy court would share concurrent jurisdiction.")

A bankruptcy court dealing with appropriate treatment of omitted debts scheduled after reopening of the bankruptcy case should in my judgment approximate as closely as possible the treatment that would have been available had the creditor been properly been listed in the first place. Accordingly, as noted above, the creditors in the pending cases were given 30 days within which to request a Rule 2004 examination of the debtor to approximate the examination of the debtor that would have occurred at a first meeting of creditors following the filing of the bankruptcy case. Thereafter, until the reclosing of the reopened case, in the absence of the filing of any adversary complaint seeking nondischargeability determination, any non-mandatory grounds should again "pass through" the bankruptcy proceeding to be resolved in the future as they might arise in further litigation. The Court in its reopening order should simply provide an opportunity during which either the debtor or the added creditor may, but are not required to, file an adversary complaint to determine dischargeability of any non–523(c) type debt as they may be advised.

The parties in the present case therefore are given ninety days from the date of the order granting reopening to file such a complaint [21], and if no such complaints are filed, the debtor and creditor will both be subject to having those grounds of nondischargeability raised in any subsequent litigation under the concurrent jurisdiction of the state or federal courts as to those grounds.[22]

### IX. DISCHARGE OF DEBTS: "MANDATORY" GROUNDS

With regard to the *mandatory* grounds of nondischargeability, which Con-

gress has provided in 523(c)(1) must be asserted and determined in this bankruptcy court, the key question is whether the bankruptcy court can effectively provide for such adjudication in the bankruptcy court, after a reopening to add an omitted creditor, where the omitted creditor without notice obviously has not complied with the Rule 4007(c) deadline to file complaints raising these grounds within sixty days of the first meeting of creditors.

### Inapplicability of Deadline

The Court determines that it has the power to provide new deadlines for the assertion of complaints objecting to the discharge of § 523(c)–type debts on the following bases. First, Section 523(a)(3)(B) of the Bankruptcy Code can serve as an independent basis for raising these grounds for determination in the bankruptcy court, because where the creditors were not listed and given the deadline notice required by Bankruptcy Rule 4007(c), the creditors may file a complaint for such determination "at any time" pursuant to Bankruptcy Rule 4007(b). Second, the sixty-day deadline set forth in Bankruptcy Rule 4007(c) is not jurisdictional but rather is a statute of limitations that can be deemed waived by the debtor's failure to list and give notice to the creditor and/or can be equitably tolled in the circumstances.

With regard to the first basis set forth above, a creditor holding a debt subject to a mandatory ground of nondischargeability, and whose debt was not listed in the debtor's original schedules, has its debt transformed into a debt subject to dischargeability analysis under 11 U.S.C. § 523(a)(3)(B). *See In re Franklin,* 179 B.R. 913 (Bankr.E.D.Cal.1995); and *In re Santiago,* 175 B.R. 48 (9th Cir. BAP 1994). This means the creditor must prove that the debt was not listed, that the creditor was not aware of the bankruptcy proceeding in time to file a timely dischargeability complaint

---

**21.** *See "Order on Motion to Reopen",* ¶ 6 (Feb. 16, 1996) (Annex "A").

**22.** The creditor however remains subject to a possible injunction and/or contempt sanction for violation of the section 524(a)(2) injunction of the Bankruptcy Code if the creditor proceeds with

litigation to collect the debt without a good faith basis for asserting nondischargeability under those provisions. *In re Weisberg,* Bk. No. 91–597, Adv. No. 96–1018 (Bankr.D.N.H., February 9, 1996).

within the 60–day deadline, and the creditor must then prove the usual elements of non-dischargeability under whichever mandatory-ground subsection of section 523 his debt falls. *Franklin, supra* at 924. "That trans-mutation makes very little difference as to the applicable substantive law or as to proof at trial, but makes all the difference for purposes of jurisdiction and of the limitations period." *Id.*

Regarding jurisdiction and timeliness of section 523(a)(3)(B) actions, the *Franklin* court explained as follows:

Jurisdiction over section 523(a)(3) ac-tions, however, is concurrent state and fed-eral jurisdiction pursuant to section 1334(b) [28 U.S.C. § 1334(b) ], rather than the exclusive federal jurisdiction pre-scribed by section 523(c). Not only may dischargeability of the fraud claim be liti-gated in state court, the action, like all the concurrent jurisdiction nondischargeability actions, may be filed "at any time" after the bankruptcy case is first filed.

In short, the penalty to the debtor for failing to schedule a fraud debt or other-wise to inform the creditor of the bank-ruptcy is forfeiture of the right to enjoy exclusive federal jurisdiction and loss of the sixty-day limitations period applicable in the exclusive jurisdiction actions.

*Id.,* citing Fed.R.Bankr.P. 4007(b); *In re Santiago,* 175 B.R. 48, 50 (9th Cir. BAP 1994); *American Standard Ins. Co. v. Bake-horn,* 147 B.R. 480 (N.D.Ind.1992); *In re Grant,* 160 B.R. 839, 844 (Bankr.S.D.Cal. 1993); and Helbling & Klein, *The Emerging Harmless Innocent Omission Defense to Nondischargeability Under 11 U.S.C. § 523(a)(3)(A): Making Sense of the Confu-sion Over Reopening Cases and Amending Schedules to Add Omitted Debts,* 69 Am. Bankr.L.J. 33, 44 (1995). This conclusion was also reached by the bankruptcy court for the Eastern District of Virginia in *In re Banks–Davis,* 148 B.R. 810 (Bankr.E.D.Va. 1992), which ruled as follows:

"This exception [in § 523(c) ("except as provided in subsection (a)(3)(B) of this sec-

tion")] exempts § 523(a)(3)(B) debt from the time limits of Rule 4007 and § 523(c). Section § 523(a)(3)(B) necessarily incorpo-rates § 523(a)(2), (4), and (6), but it is nonetheless a distinct and separate subsec-tion not limited to the same sixty day filing deadline which § 523(c) and Fed. R.Bankr.P. 4007(c) impose on § 523(a)(2), (4), and (6)."

*Id.* at 813. *See also Matter of Zablocki,* 36 B.R. 779, 782 (Bankr.D.Conn.1984) ("As § 523(c) expressly provides, when § 523(a)(2), (4) or (6) issues are presented in a § 523(a)(3)(B) context, they are not subject to the restrictions of § 523(c) or, therefore, Rule 4007.")

The newly-added creditor must then be given a reasonable opportunity to assert any claim of nondischargeability. *See In re De-walt,* 961 F.2d 848 (9th Cir.1992). In *In re Dewalt,* the Ninth Circuit Court of Appeals ruled that because section 523(a)(3) does not define the time for filing of complaints by late-listed creditors, the 30–day provision in Bankruptcy Rule 4007(c) would be interpret-ed as a "guide to the minimum time within which it is reasonable to expect a creditor to act at penalty of default." *Id.* at 851; *see also In re Shaheen,* 174 B.R. 424, 427 (E.D.Va.1994), *citing* Fed.R.Bankr.P. 4007(c) ("The second sentence of Rule 4007(c) man-dates that a creditor receive thirty days no-tice before the bankruptcy court may fore-close his right to participate in the process."); *but see In re Sam,* 894 F.2d 778 (5th Cir. 1990) (Court held that creditor who had actu-al notice of debtor's bankruptcy eighteen days prior to the 60–day deadline had time to file a motion for extension of the deadline, and therefore was not permitted to file a late complaint.[23])

*Waiver and/or Equitable Tolling—§ 105*

Alternatively, a second basis for this Court concluding that it has the power to set new deadlines for filing complaints to determine the dischargeability of § 523(c) type debts is that the sixty-day deadline set forth in Bank-ruptcy Rule 4007(c) is not jurisdictional but

---

**23.** The United States District Court for the East-ern District of Virginia explained that, "Basical-ly, the *In re Sam* opinion disregards the thirty

day notice requirement contained in Rule 4007(c)." *In re Shaheen,* 174 B.R. 424, 428 (E.D.Va.1994), *citing In re Sam,* 894 F.2d at 781.

rather is a statute of limitations that can be deemed waived by the debtor's failure to list and give notice to the creditor and/or can be equitably tolled in the circumstances. *See In re Santos,* 112 B.R. 1001 (9th Cir. BAP 1990); *In re Begue,* 176 B.R. 801 (Bankr.N.D.Ohio 1995); and *Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946) (court held that statute of limitations did not begin to run until plaintiff discovered fraud, ruling that, "This equitable doctrine is read into every federal statute of limitation.").

In *Santos,* the Bankruptcy Appellate Panel for the Ninth Circuit, in analyzing whether the deadline for discharge complaints regarding fraud-type debts could be extended by agreement of the parties, concluded "that the time limits set forth in Rules 4007(c) and 4004(a) are not jurisdictional requirements", but rather are statutes of limitation that may be subject to equitable relief under the doctrines of estoppel, waiver or equitable tolling. *In re Santos,* 112 B.R. at 1009. Similarly, in *Begue,* the bankruptcy court determined that a complaint mailed within the 60-day time period but received after the deadline had passed was timely, holding that "the passage of the dischargeability deadline set forth in 11 U.S.C. § 4007(c) is appropriately viewed as a statute of limitations and not a termination of the bankruptcy court's jurisdiction," because "[t]o conclude otherwise is inconsistent with the structure of the Bankruptcy Code." *In re Begue,* 176 B.R. at 804.

The *Santos* Panel explained the analysis for resolving whether a deadline is jurisdictional or a statute of limitations:

In determining whether a given time period is a jurisdictional prerequisite or the equivalent of a statute of limitations that can be subject to waiver, estoppel or equitable tolling, courts examine the structure, legislative history and underlying policy of the provision in question and the related statutory scheme. *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393–97 [102 S.Ct. 1127, 1132–35, 71 L.Ed.2d 234] (1982).

\* \* \* \* \* \*

Although this "legislative history" [The Advisory Committee Note to Rule 4007(c) ]

implies that the bankruptcy court ... will be powerless to act upon dischargeability questions if the complaint is not timely filed, the structure and policy of this provision and the relevant statutory scheme provide stronger support for a determination that the bar date at issue is not jurisdictional.

\* \* \* \* \* \*

Moreover, an examination of the purposes and policies underlying the bar date suggests that the time limits should not be considered jurisdictional. The purposes of Rules 4004 and 4007(c) are to further the prompt administration of bankruptcy estates, *e.g., In re Hill,* 811 F.2d 484, 486–87 (9th Cir.1987), and the "fresh start" goals of bankruptcy relief as well as to allow a debtor to "enjoy finality and certainty in relief from financial distress as quickly as possible." *In re Harrison,* 71 B.R. 457, 459 (Bankr.D.Minn.1987).... [T]hese purposes are not served by the total preclusion of equitable relief which would be required upon a determination that the time limits are jurisdictional. Such a total preclusion of equitable relief would be inconsistent with those Panel cases which recognize, in dicta, that relief from the bar date should be allowed in the extraordinary cases, *see, e.g., In re Rhodes,* 61 B.R. 626, 630 (9th Cir. BAP 1986), *In re Harten,* 78 B.R. 252, 253 (9th Cir. BAP 1987).

\* \* \* \* \* \*

We conclude that the time limits set forth in Rules 4007(c) and 4004(a) are not jurisdictional requirements.

*In re Santos,* 112 B.R. 1001, 1005–1006, 1009 (9th Cir. BAP 1990).

██ This Court agrees with the analysis and conclusion of the *Santos* Panel. The Bankruptcy Code is designed to provide complete relief from past debts to the honest debtor, and the innocent debtor should be given an opportunity to have the dischargeability of a mandatory-ground debt determined in the bankruptcy court notwithstanding his failure to list the debt in his original schedules.

The Court of Appeals for the Sixth Circuit in *In re Soult*, 894 F.2d 815 (6th Cir.1990), recognized the power of the bankruptcy court to adjudicate nondischargeability issues, notwithstanding the expiration of the Rule 4007(c) deadline, in a case involving an omitted creditor who objected to the reopening of the case, noting:

> Dr. Maddox [the creditor] has not lost any meaningful right that he would have enjoyed if he had been properly listed in the first place. The bankruptcy court specifically indicated that if assets from which a dividend could be paid should ever be discovered, Dr. Maddox would be entitled to participate in the dividend. *If Dr. Maddox wants to contest dischargeability, he can do that.* [Emphasis supplied] See *In re Brown*, 60 B.R. 983 (Bkrtcy.S.D.Ohio 1986); *In re Daniels*, 51 B.R. 142 (Bkrtcy. S.D.Ohio 1985).

*Id.* at 817, reaffirming its prior decision in *In re Rosinski*, 759 F.2d 539 (6th Cir.1985) (approving reopening to add omitted creditor to schedules).

The statutory scheme of the Bankruptcy Code, particularly the time requirement of section 523(c), is designed to give the debtor early notice of any debts that will not be discharged that will have to paid out of post-petition assets, so that when the debtor emerges from bankruptcy he has his affairs in order and has due notice of any remaining obligations. The creditor, also, should not be denied an opportunity to have the debt determined nondischargeable in the bankruptcy court, particularly where the creditor had no involvement in the failure to present the debt for such a determination by the original deadline. *See In re Shaheen*, 174 B.R. 424, 428 (E.D.Va.1994), *citing In re Dewalt*, 961 F.2d 848, 850–51 (9th Cir.1992) and *In re Sam*, 894 F.2d 778, 781 (5th Cir.1990) ("Protecting a creditor's right to participate in the bankruptcy process is a significant policy of the Bankruptcy Act.").

 The section 523(c) deadline, being a statute of limitations rather than jurisdictional, is subject to equitable principles, including waiver, equitable tolling, and equitable estoppel. *See In re Begue*, 176 B.R. 801, 804 (Bankr.N.D.Ohio 1995), *citing United States v. Locke*, 471 U.S. 84, 94 n. 10, 105 S.Ct. 1785, 1792 n. 10, 85 L.Ed.2d 64 (1985); *Zipes v. Trans World Airlines Inc.*, 455 U.S. 385, 392–98, 102 S.Ct. 1127, 1131–35, 71 L.Ed.2d 234 (1982); *Jones v. TransOhio Savings Assoc.*, 747 F.2d 1037, 1039 (6th Cir. 1984). The debtor, by failing to list the creditor in the original schedules, has waived or is equitably estopped from asserting the passing of the 60–day deadline as a defense to any complaint the creditor may file for dischargeability determination. The creditor being deprived of the opportunity to assert a mandatory ground of nondischargeability within the 60–day deadline, through no fault of its own, should not be deemed bound by the unnoticed deadline which can be considered to be equitably tolled. Cf. *Begue* at 804, *citing Forti v. Suarez–Mason*, 672 F.Supp. 1531, 1549 (N.D.Cal.1987).

 In this situation involving cases properly reopened to add omitted creditors to the schedules, where the Rule 4007(c) deadline is not applicable, the court, in my judgment, can resort to its § 105 general equitable power to implement the expressed Congressional purpose to have the mandatory grounds of nondischargeability decided within the Congressionally-intended jurisdiction of the bankruptcy court by providing a new deadline for such complaints for newly-added creditors.

Section 105(a) of the Bankruptcy Code provides *inter alia* that "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." While it is recognized that the equitable powers of the bankruptcy courts "must and can only be exercised within the confines of the Bankruptcy Code", *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988)[24], the present situation involves precisely the problem of exercising the equitable power to further the purpose of the

---

**24.** The Court of Appeals for this Circuit has recently recognized the continuation of equitable powers in the bankruptcy court. See *In re* *Thinking Machines Corp.*, 67 F.3d 1021, 1028–29 (1st Cir.1995).

*statute* in the face of a rule which neglects to provide an accommodation for that overriding legislative purpose. It has been noted in the bankruptcy context that where a Code section arguably may conflict with a Bankruptcy Rule "it is the rule that must fall, not the statute", *In re Hausladen,* 146 B.R. 557, 560, fn. 5 (Bankr.D.Minn.1992), citing *U.S. v. Cardinal Mine Supply, Inc.,* 916 F.2d 1087, 1089 (6th Cir.1990). See also *In re Dominguez,* 51 F.3d 1502, 1507 (9th Cir.1995) ("... bankruptcy rules ... are presumptively valid if they are not inconsistent with the statute ..."); *Matter of Osman,* 164 B.R. 709, 711, 714–15 (Bankr.S.D.Ga.1993) (Bankruptcy Rule 3002(a) requiring proof of claim be timely filed for claim to be allowed in chapter 7 must yield to § 726(a) of Code).

Further support for exercising a § 105 power to prescribe a nondischargeability complaint deadline for an omitted creditor, once the case is properly reopened and the creditor is added to the schedules, comes from the inherent power of any court to manage litigation pending before it. See *Brockton Savings Bank v. Peat, Marwick, Mitchell & Co.,* 771 F.2d 5, 11 (1st Cir.1985) (" 'the rules of civil procedure do not completely describe and limit the power of district courts'); *Aoude v. Mobil Oil Corp.,* 892 F.2d 1115, 1119 (1st Cir.1989) (district courts 'retain the inherent power to do what is necessary and proper to conduct judicial business in a satisfactory manner'.... This inherent power is 'rooted in the chancellor's equity powers [ ] to process litigation to a just and equitable conclusion.' ")

In the circumstances presented by the cases herein, the Court deems it an appropriate exercise of its equitable powers under section 105 to extend to the newly-listed creditors, as far as possible, the same rights that they would have had if they had been listed in the debtors' original schedules, and the Court accordingly should give such creditors 90 days[25] to file any request for a determination of the dischargeability of any

mandatory-ground debts. *See In re Potter,* 185 B.R. 68 (Bankr.C.D.Cal.1995) (debtor equitably estopped from asserting time bar to creditor's complaint); *In re Soult,* 97 B.R. 363, 365 (S.D.Ohio 1989), *aff'd* 894 F.2d 815 (6th Cir.1990), *citing In re Daniels,* 51 B.R. 142 (omitted creditor given 30 days in reopened case to file a dischargeability complaint) (Bankr.S.D.Ohio 1985) and *In re Brown,* 60 B.R. 983 (Bankr.S.D.Ohio 1986) (previously unlisted creditor may be given a reasonable time to file a dischargeability complaint.); and *In re Padilla,* 84 B.R. 194, 197 (Bankr.D.Colo.1987) (case reopened and creditors given "sixty (60) days within which to file a complaint to determine dischargeability under § 523(a)(3)(B)").

## X. CONCLUSION

The Court finds and rules that the pending motions to reopen should be granted pursuant to 11 U.S.C. § 350 to accord relief to the debtors and for other cause. The Court further finds and rules that, pursuant to the general policies and principles underlying the Bankruptcy Code, as reflected in the statutory scheme and case law thereunder, with particular emphasis on the specific statutory direction embodied in § 523(c)(1), and pursuant to this Court's equity powers under 11 U.S.C. § 105, the newly-listed creditors should be given an opportunity to conduct examinations of the debtors and both the debtors and the creditors should have the opportunity to have the dischargeability of the newly-listed debts determined in the bankruptcy court. With regard to any mandatory-ground for establishing nondischargeability, creditors who fail to raise such issues within the deadline specified shall be barred thereafter from raising such grounds.

In accordance with the foregoing the debtors' pending motions to reopen and motions to amend schedules in each of the captioned cases are granted by separate Orders entered in each of the captioned cases,[26] with

---

**25.** The 90 days allows for 30 days for the creditor to examine the debtor under Rule 2004 if it so desires and then an additional 60 days to file a complaint. *See "Order on Motion to Reopen"* ¶ 5 (Feb. 16, 1996) (Annex "A").

**26.** The Orders also provide for the possibility of abstention on a 10 day request, *Order on Motion to Reopen,* ¶ 8 (February 16, 1996) (Annex "A"), in the event that intervening circumstances such as a pending state court lawsuit or otherwise might make it more equitable to leave or send

provision for scheduling examinations of the debtors in accordance with Bankruptcy Rule 2004 and provision for the filing of complaints for dischargeability determinations under section 523 of the Bankruptcy Code.[27]

ANNEX "A"

UNITED STATES
BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

In re:
Peter L. Walker,
Debtor

BK No. 93–11377

Chapter 7
*ORDER ON MOTION TO REOPEN*

This case having come before the Court on a Motion to Reopen (Court Doc. No. 11) seeking leave to reopen and add an omitted creditor, and the Court having heard the same after notice, and the creditor to be added not objecting thereto, and the Court having found that omission was inadvertent and innocent and that no prejudice is suffered by the creditor by virtue of the delayed listing of its debt, and the record revealing that this was a "no-asset" case in which no distribution was made to creditors and no claims deadline was established, and the Court noting that this is a core proceeding in accordance with 28 U.S.C. § 157(b) as to which this Court has jurisdiction of the subject matter and the parties, it is hereby

ORDERED, ADJUDGED and DECREED as follows:

1. The Motion to Reopen and Add a Creditor referenced above is hereby granted. The creditor, York River Trap Company, and its claimed debt is hereby added to the list of creditors in this case.

2. The Motion to Reopen is granted "for cause" under § 350(b) of the Bankruptcy

Code since the creditor was not scheduled as required by Bankruptcy Rule 1007(a)(1), and should be so listed as required by law, and further should be so listed in the event any assets are discovered in the future which may make a distribution to creditors possible. The reopening is also "for cause" in that it will make available to the omitted creditor the power to examine the debtor under the Bankruptcy Code and Bankruptcy Rules which was not available before the case was closed due to the failure to list the creditor and the creditor's lack of either formal or actual notice of these proceedings.

3. The Motion to Reopen is also granted "to accord relief to the debtor" pursuant to § 350(b) of the Bankruptcy Code in order to make available the bankruptcy forum to the debtor for purposes of seeking relief under this Court's continuing, concurrent jurisdiction to determine dischargeability of debts, inasmuch as the omitted creditor has not objected or asserted that the debt was intentionally omitted from the schedules and/or that the creditor has been prejudiced in any way by the delay in scheduling its debt.

4. The added creditor is hereby given 30 days from the date of this Order within which to schedule a Rule 2004 examination of the debtor if it so desires. This Order hereby authorizes and directs the debtor to so appear and be examined upon reasonable notice.

5. The added creditor is hereby given 90 days from the date of this Order within which to file a complaint asserting any ground for nondischargeability the creditor may have under § 523(a)(2), (a)(4), (a)(6) or (a)(15) of the Bankruptcy Code. Failure to file such a complaint within the time specified shall bar the creditor from asserting grounds of nondischargeability on those grounds against the debtor thereafter in either this or any other court.

the litigation to another forum once the creditor has been added to the schedules in the reopened case. This possibility may exist as well regarding the "mandatory grounds" since it is arguable that the debtor's omission created concurrent jurisdiction in the state courts as to those grounds.

**27.** This Opinion deals only with case law on the issues presented as existing on the entry of the February 16, 1996 Orders in the pending cases.

6. Either the debtor or the added creditor may, but are not required to, file an adversary complaint to determine dischargeability of the debt under any other subsection of § 523(a) within 90 days from the date of this Order as they may be advised. If no such complaints are filed, the debtor and creditor will both be subject to having those grounds of nondischargeability raised in any subsequent litigation under the concurrent jurisdiction of the state or federal courts as to those grounds. The creditor however remains subject to a possible injunction and/or contempt sanction for violation of the § 524(a)(2) injunction if the creditor proceeds with litigation to collect the debt without a good faith basis for asserting nondischargeability under those provisions.

7. The addition of this debt to the list of debts scheduled in this case does not by itself render the debt dischargeable or nondischargeable. *Bankruptcy Code* 11 U.S.C. §§ 523(a)(3), 523(c)(1), 524(a), and 727(b). It simply eliminates as a ground for nondischargeability any contention that the debt is nondischargeable *solely* because it was not listed in the original schedules.

8. Nothing in this Order prevents a request that this Court abstain from any of the proceedings specified above, provided that such request is made by motion not later than 10 days from the date of this Order.

9. The Clerk shall cause a copy of this Order to be served this date upon the debtor, the added creditor, their attorneys, and the U.S. Trustee and the same shall constitute due notice.

10. A Memorandum Opinion discussing the case law pertaining to this matter will follow.

DONE and ORDERED this 16th day of February, 1996 at Manchester, New Hampshire.

/s/ James E. Yacos

JAMES E. YACOS
Bankruptcy Judge